STATE ex rel. WYNNE, Appellant, v. EXAMINING AND TRIAL BOARD et al., Respondents.

(No. 2,978.)

(Submitted May 10, 1911. Decided May 27, 1911.)

[117 Pac. 77.]

Cities and Towns—Police Department—Metropolitan Police Law—Officers—Misconduct in Office—Evidence—Defenses.

Officers—Misconduct in Office—What Constitutes.
1. Any act involving moral turpitude, or any act which is contrary to justice, honesty, principle or good morals, if performed by virtue of office or by authority of office, is included in a charge of misconduct in office.

Same—Police Force—Illegal Mileage—Misconduct in Office—Evidence—Sufficiency.
2. Evidence held sufficient to support a finding that relator was guilty of misconduct in his office of chief of police in claiming and collecting mileage fees for services performed by one of his subordinates, re-lator paying to the latter his actual traveling expenses and retaining for himself the balance of the total amount received.

Same—Good Faith—Custom—Defenses.
3. That relator acted in good faith in claiming mileage, and the alleged fact that the method pursued by him in the premises was one in gen-eral vogue, did not constitute any defense.

Same—Improper Motives—Defenses.
4. Improper motives on the part of the examining and trial board of the police department in preferring charges against relator held im-material under the circumstances.

Appeal from District Court, Silver Bow County; John B. McClernan, Judge.

CERTIORARI by the state on the relation of E. W. Wynne to re-view the action of the examining and trial board of the police

department of the city of Butte in finding him guilty of miscon-
duct in office, and of the mayor of said city in discharging him
permanently from his office of chief of police. From a judg-
ment ordering dismissal of the proceedings, relator appeals.
Affirmed.

In behalf of Appellant, *Messrs. Kirk, Bourquin & Kirk,* and
*Mr. W. E. Carroll,* submitted a brief. *Mr. Carroll* and *Mr.
George M. Bourquin* argued the cause orally.

*Certiorari* is the proper remedy. "Where the power of a
municipal body to remove from office is not discretionary, but
only for cause, after notice and hearing, the proceedings are
judicial in their nature and may be reviewed on *certiorari.* On
such review the court will inspect the record to see whether the
body had jurisdiction and kept within it, and whether the
charges were sufficient in law; and will examine the evidence, not
for the purpose of weighing it, but to ascertain whether it fur-
nished any legal and substantial basis for the removal." (28
Cyc. 442, citing *Matter of Carter,* 141 Cal. 316, 74 Pac. 997;
*Carter* v. *Durango,* 16 Colo. 534, 25 Am. St. Rep. 294, 27 Pac.
1057; *Board of Aldermen* v. *Darrow,* 13 Colo. 460, 16 Am. St.
Rep. 215, 22 Pac. 784; *State* v. *Duluth,* 33 Minn. 238, 39 Am. St.
Rep. 595, 55 N. W. 118; *People* v. *Nichols,* 79 N. Y. 582; *Hayden*
v. *Memphis,* 100 Tenn. 582, 47 S. W. 182.) No intendments can
be indulged in as to the jurisdiction and regularity of the pro-
ceedings in such cases. (*State* v. *Lupton,* 64 Mo. 415, 27 Am.
Rep. 253.) Whether the charges preferred are sufficient in law
is a matter properly reviewable. (*State* v. *New Orleans,* 107 La.
632, 32 South. 22; *State* v. *Shakspeare,* 43 La. Ann. 92, 8 South.
893; *State* v. *Duluth, supra; State* v. *Hoglan,* 64 Ohio St. 532,
60 N. E. 627; *Ayers* v. *Hatch,* 175 Mass. 489, 56 N. E. 612;
*People* v. *Brady,* 48 App. Div. 128, 62 N. Y. Supp. 603; *Riggins*
v. *Waco,* 100 Tex. 32, 93 S. W. 426; *Hogan* v. *Collins,* 183 Mass.
43, 66 N. E. 429.)

The respondent mayor was a proper party defendant. Should
there be any doubt as to the propriety of making the mayor a

respondent, we submit that the portion of the motion to quash based upon misjoinder of parties should not be allowed to prevail as the recourse in such case is to retain the writ as to the proper parties and quash as to the remainder. (*Champion* v. *Minnehaha County,* 5 Dak. 416, 41 N. W. 739; *State* v. *New Brunswick,* 42 N. J. L. 510.) Nor will the writ be quashed if directed to an unnecessary party. (*Hutchinson* v. *Rowan,* 57 N. J. L. 530, 31 Atl. 224.)

The misconduct in office contemplated by the Police Law relates to acts committed against the interests of the city, and must have immediate relation to his office, or be of so infamous a nature as to render him unfit to execute any public franchise. (1 Dillon on Municipal Corporations, sec. 251; *State* v. *Duluth, supra; Speed* v. *Council,* 98 Mich. 360, 39 Am. St. Rep. 555, 57 N. W. 406, 22 L. R. A. 843.)

While it is true that the statute vests the discretion in the mayor of determining the punishment for neglect of duty in failing to report to the mayor daily, it is hardly possible that the legislature intended that the extreme penalty should, under ordinary circumstances be visited upon a police officer for a mere technical violation of a rule which is not shown to have prejudiced any rights of the public or interfered with the proper discipline of the department. (*People* v. *Greene,* 89 App. Div. 296, 85 N. Y. Supp. 866.)

Upon our advancement that it stands admitted upon the motion to quash that the decision of the board was made through bias, was predetermined, partisan and unfair, we submit, as clearly outlining the proposition, the opinion of the court in *People* v. *Monroe,* 97 App. Div. 283, 89 N. Y. Supp. 929.

The motion to quash in this proceeding having but the effect of a demurrer under another name, we submit that the allegations as to bias, unfairness, predetermination and interested partisanship, so being admitted as true, ought as a matter of simple justice to have impelled the lower court to examine the facts offered to it and to have reviewed the decision of the board upon its merits, and if it found such to have existed, then to have granted relief.

*Mr. Edwin M. Lamb, Mr. John R. Boarman,* and *Mr. N. A. Rotering* submitted a brief in behalf of Respondents.  *Mr. H. L. Maury* argued the cause orally.

We submit that every requirement of the law in the trial was complied with, and that the judgment of the district court was and is correct.  The record shows that Mr. Wynne was intent upon performing some of the duties that properly belonged to the sheriff of Silver Bow county, that the sheriff objected, and that he collected fees without rendering any service whatever. That Wynne was guilty of moral turpitude in so doing there can be no question.  "Moral turpitude is anything done contrary to justice, honesty, principle or good morals." (27 Cyc. 912; *Brackenridge* v. *State,* 27 Tex. App. 513, 11 S. W. 630, 4 L. R. A. 360.)

Appellant urges that the charges are insufficient, and that there is no sufficient evidence to support said charges.  Under the adjudicated cases the charges and the evidence are sufficient. "Where the statute prohibits a removal except for cause but does not specify what shall constitute cause, the question is for the determination of those vested with the power of conducting the hearing."  (28 Cyc. 445.)  In an Illinois case the plaintiff in error, a civil service employee, had absented himself from duty without permission, for three days.  The commission upon trial found him guilty and he was removed from the service, and such absence held sufficient cause.  (*Kammann* v. *City of Chicago,* 222 Ill. 63, 78 N. E. 16.)  Where it appears that the proceedings were fairly conducted and the evidence was sufficient to support the charges, the proceedings will not be reversed.  (28 Cyc. 447; *People ex rel. Gilon* v. *Coler,* 78 App. Div. 248, 79 N. Y. Supp. 1085; see, also, *Ayers* v. *Hatch,* 175 Mass. 489, 56 N. N. E. 612.)

It is urged that misconduct in this case was not committed by Mr. Wynne against the interests of the city.  It is immaterial against what interests he was acting.  (*Joyce* v. *City of Chicago,* 216 Ill. 466, 75 N. E. 184.)  Nor does it make any differ-

ence what his intentions may have been.  (*State ex rel. Stark-weather* v. *Common Council,* 89 Wis. 612, 64 N. W. 304.)

MR. JUSTICE SMITH delivered the opinion of the court.

On July 12, 1910, the above-named relator was chief of police of the city of Butte. On that day written charges were filed against him by the mayor, with the examining and trial board of the police department; a hearing was subsequently had and the board found him guilty of misconduct in office. The mayor thereupon discharged him permanently from the police department and from his office of chief of police. He subsequently sued out of the district court of Silver Bow county a writ of review, praying that the actions of the board and of the mayor be set aside and held for naught, whereupon the respondents moved to quash the same. The motion was granted and the proceedings were dismissed. From a judgment entered pursuant to the order of dismissal relator has appealed. Attached to his affidavit are the charges filed against him by the mayor, together with his answer thereto and the testimony taken at the hearing, so that the district court had before it, and we have before us, the whole record upon which the mayor and the board acted.

It is contended that the charges were not sufficient in law to constitute or be misconduct in office or any offense whatever. In the case of *Bailey* v. *Examining and Trial Board,* 42 Mont. 216, 112 Pac. 69, we said: "A charge without substance is no charge. One of the essential requirements of law is that a charge shall embody facts sufficient to constitute a cause of action within the meaning of the Act." The relator was charged with misconduct in his office of chief of police. It would serve no useful purpose at this time, nor is it necessary, to attempt to detail what may be comprehended in a charge of misconduct in office. Any [1] act involving moral turpitude, or any act which is contrary to justice, honesty, principle or good morals, if performed by virtue of office or by authority of office, is certainly included therein. The written accusation filed with the board sets forth in detail the alleged acts of relator from which the conclusion

was drawn that he was guilty of misconduct in office. The testimony substantially bears out the allegations of the charge, and we may therefore consider both together. As was said in the *Bailey Case, supra:* "Before the charge can be sustained some substantial evidence must be given in support of it."

It appears from the evidence of one Lavelle, who held the position of city jailer in Butte, that on or about the 10th or [2] 12th day of August, 1908, he was spending his vacation in the city of Great Falls, where he was attending an Elks' convention; he went there on a round trip ticket which he himself purchased. While in Great Falls, chief of police Pontet of that city told him that he had arrested two men named Gilbert and Colosmo, who were wanted in Butte for stealing a bicycle, and asked him if he would take them back when he returned. He assented and took them back to Butte, where they were placed in the city jail. He had no communication with the relator before returning to Butte, nor did he have a warrant of arrest; but the next day Wynne asked him what it had cost him to bring the men over and he replied, "Thirteen dollars." Wynne paid him this sum and no more. A warrant having been issued out of a justice of the peace court against Gilbert and Colosmo charging them with petit larceny, the relator made the following return thereto: "I hereby certify that I received the within warrant on the 15th day of August, 1908, and served the same by arresting the within named Gilbert and Colosmo and bringing them into court this 18th day of August, 1908. Fees serving warrant, mileage $68.80; Great Falls, 688 miles. Total fees on warrant. E. W. Wynne, Chief of Police."

On August 18, 1908, the relator filed with the county auditor the following claim against the county:

"Silver Bow County to E. W. Wynne, Dr.

"State of Montana v. Philip Gilbert, Joe Colosmo.

"(Warrant) Mileage Great Falls............688 miles $68.80
"Officer Butte to Great Falls................172 miles.
"Officer Great Falls to Butte................172 miles.
"Two prisoners Great Falls to Butte..........344 miles.

688

"State of Montana,

"County of Silver Bow,—ss.

"The undersigned, being duly sworn, says that the items mentioned in the foregoing account were furnished as therein stated, and that the amount therein claimed is just, due and wholly unpaid.

"E. W. Wynne.

"Subscribed and sworn to before me this 18th day of August, 1908.

"Gus. J. Stromme,
"County Auditor.
"Geo. Roff,
"Deputy County Auditor."

The following indorsements appear on the claim:

"To the Board of County Commissioners:

"Gentlemen: I have examined the within account and claim against Silver Bow county and find that the amount, $68.80, appears to be correct as presented, unpaid and should be allowed.

"Gus. J. Stromme,
"County Auditor.

"The within account is allowed in the sum of $——— on the general fund, October 15, 1908.

"John G. Holland,
"Chairman Board Co. Com."

On October 15, 1908, the relator received from the county treasurer the amount claimed by him, $68.80. Mr. Brown, a member of the board of county commissioners, testified that the claim was not immediately allowed for the reason that the board was opposed to paying it, "thinking that that part of the work belonged to the sheriff." Mr. Holland, another commissioner, testified that the board was waiting to ascertain whether the sheriff would make a similar charge for the same service. He also testified that Chief Wynne appeared before the board and "claimed that he attended to the service and that he should be paid, that other chiefs of police were being paid for similar character of work." Mayor Corby, from whom Wynne received

his probationary and also his permanent appointment as chief of police, testified that he was advised by the chief that he claimed the right to go outside of the city to make arrests and would either go himself or send a man to do so; he asked Wynne if the city would be liable for the costs, and was told that the same would be a county charge; Wynne told him he expected to make charges against the county for such services, and, under the circumstances, he approved of his determination to do so, and afterward appointed him permanently to the office of chief of police. It does not appear, however, that Mayor Corby had any knowledge of this particular charge when he made the appointment.

On September 16, 1908, the county auditor transmitted to the county attorney a copy of Wynne's bill against the county with the inquiry: "Is the bill of E. W. Wynne a legal claim against Silver Bow county and should the same be paid?" The county attorney replied that service of the warrant by the chief of police was valid and that the claim should be paid. The county attorney himself testified that he regarded it as a legitimate claim against the county, but there is not anything in his testimony or in his letter to indicate that he had any knowledge that Wynne had not actually performed the services.

Mr. Henderson, the sheriff, testified that he was of opinion that the service of the warrant belonged exclusively to his office, and therefore protested against the payment of the claim, but having learned afterward that the "chief had as much right to collect the money as the sheriff had," he withdrew his objections.

The relator testified that the owner of the stolen bicycle made complaint of his loss and was told by him to go to the county attorney and get a warrant; he then traced the accused men to Great Falls and was notified by Chief Pontet that they had been arrested; prior to this time he had been told by chief of police Flannery, of Helena, that he was foolish not to claim the right to make such arrests, as he, Flannery, always did it. The county attorney gave him a warrant for the men. He continued: "I fully intended to go after the men but it so happened that Lavelle was over there. The message came that Lavelle was there

and was coming home the next day, and if I wanted him to, he would bring the prisoners here. I had the warrant in my possession and said all right, he could bring them. He brought them. The next day Lavelle told me what his expenses had been and I paid him. 'Now,' I says, 'this is something new in this office and I will put in a bill to the county commissioners; I don't know whether they will allow it or not; if they don't I am out this money that I have paid you. If they do allow it I will pay you your fare over there and back.' I put in the bill and they held it up; they didn't know what to do with it; I talked to the county auditor, explained the matter thoroughly to him; talked to the commissioners. They said they would get an opinion from the county attorney. Finally I went up there the last time; Commissioners Cronin and Holland were present, and I asked them to act on the bill. I says, 'Now, we brought these men back—I didn't do it myself; it so happened that an officer was there and brought them back, but we have done this work. I would like to have you act on this bill. If it isn't right, disallow it; if the amount isn't right, cut it down, but I would like to have you do something with it in order that I may know what to do in the future, if any of this work comes up.' They then had consulted with the county attorney, I believe, and they both said that there was no question but that I was entitled to that money and they allowed the bill. Lavelle never mentioned the matter to me again. He has never made any request for any portion of the money. If it had ever been mentioned in the least way, or brought to my memory, it would have been paid. He knew absolutely that I was going to put in a bill because I told him so. I paid him the thirteen dollars from my own funds and the city of Butte never repaid me any portion of it. I worked in the auditor's office for two or three years and know positively that all bills were put in in the sheriff's name, no matter who served the warrant or did the work. The bills were paid in the sheriff's name and he received the entire amount. I presume actual expenses were allowed to the deputies in such case. I simply followed the custom, explained it thoroughly to the county commissioners so that there would be no mistake

about it. They then made no objection to the amount of the bill. They said if they didn't pay it to me they would have to pay it to the sheriff, and it didn't make any difference to them who it was paid to, so long as the work was done. I saw Mr. Lavelle almost daily while I was in the office. He never even asked me if the bill had been allowed. When I got this $68.80 I presume it refreshed my memory that he was entitled to something. I didn't happen to think of that when I saw him. I didn't offer him any of the money. All I expected to give him would be his fare over there and back; he was entitled to that and I intended to pay him and if he brought it up when I saw him I would have paid him.''

County Commissioner Brown testified that he had no knowledge that Wynne did not go to Great Falls, until after the claim had been allowed. Lavelle denied that Wynne told him that if the claim was allowed his railroad fare would be paid both ways, and he also testified that he and Wynne did not discuss the matter of filing a claim against the county.

It will be seen from the foregoing that the question presented to Mayor Corby, and to the county attorney, the county commissioners and the auditor, was whether the chief of police of Butte could lawfully serve a warrant outside of Silver Bow county. Those officers correctly determined that he could do so. (*State ex rel. Quintin* v. *Edwards,* 38 Mont. 250, 99 Pac. 940.) And of course, if he could lawfully serve the warrant, he could claim legal fees for such service. But the broader, general question whether an officer may claim fees for a service which he has not actually performed, basing his claim upon the fact that he has achieved the same result that would have been accomplished had he performed the service, seems not to have been presented to them for determination. The relator had no greater right to charge statutory mileage for himself than he would have had had he induced the accused persons to go from Great Falls to Butte unaccompanied by an officer. The case involves the consideration of a question to which the people of the country are at present giving considerable thought and attention.

It is contended for the relator that he acted in entire good faith, that he thought he had a legal right to charge mileage [3] to the same extent as would have been the case had he actually traveled from Butte to Great Falls and return. But he cannot be heard to make such claim. Mr. Justice Hunt, speaking for this court in the case of *Leggatt* v. *Prideaux*, 16 Mont. 205, 50 Am. St. Rep. 498, 40 Pac. 377, said: "That the justice of the peace believed he had a legal right to charge the fees he did, and acted in good faith in taxing and collecting the fees, constitute no defense. It would be most dangerous to the welfare of society if an officer elected to administer the law could violate it to his own pecuniary advantage, and escape the consequences of his act by pleading ignorance of the statute he had violated. That ignorance of the law is no excuse is a postulate of law, but, unless the maxim is upheld, there would be innumerable problems presented to courts, and he who knew the least might fare the best; or, as is said by the supreme court of California in *People* v. *O'Brien,* 96 Cal. 171, 31 Pac. 45, 'the denser the ignorance the greater would be the exemption from liability.' * * * The receiving of the illegal fees is the gist of the wrong under the statute, and, when such fees are deliberately accepted, the law is violated." This relator had no right to claim mileage for an officer. The statute is plain. There are no perquisites, as such, attached to the performance of official duty in Montana. Our laws contemplate that officers shall be paid for actual service. The statute expressly declares that a sheriff, constable or other peace officer, traveling in the discharge of his duties, shall charge only for each mile *actually and necessarily* traveled. (Rev. Codes, sec. 3137.) The relator gains nothing by reason of the fact that other officers may have made similar charges. That system may be in vogue, but, if such be the case, the system is vicious and wrong. No officer has any right to charge the people for a service which he has not actually performed.

Nothing is gained for the relator by a consideration of the fact that the officers of Silver Bow county paid his claim, or

that the mayor made his appointment permanent after this particular charge had been made. Assuming that they had full knowledge of the facts, which the record, instead of disclosing, tends rather to negative, their acquiescence in the carrying forward of such a system cannot possibly make it right. The system is fundamentally wrong, and no measure of participation therein by others can change the fact. It is unfortunate, perhaps, for the relator, that he is the first to suffer from an overturning of the system, but courts cannot be influenced by such considerations. The sole question for us to determine is, whether there was produced before the examining and trial board any substantial evidence in support of the charge that the relator was guilty of misconduct in his office of chief of police. We hold that there was.

It is alleged in the affidavit of relator that "the respondents did not act in good faith in the presentation and trial of said [4] charges, but they were at all times actuated by partisan political motives in a united effort to oust all appointees made under the administration of Mayor Corby, and particularly to oust this relator and to install as members of the police department the partisans, friends and political co-workers of the respondents." It is then set forth that two of the members of the examining and trial board were Democrats and the third "claimed to be a Republican"; that one of the Democratic members had stated that he did not "believe in the Metropolitan Police Law," and the other had said he believed that "everything was fair in politics if necessary to gain party success." It is further alleged that the respondent mayor, Nevin, "has endeavored by any and every means in his power to set aside the plain provisions of the said Metropolitan Police Law," and that in furtherance of such endeavors he had, immediately on coming into office, filed charges against certain of Mayor Corby's appointees, and had suspended and discharged others. It is claimed that by filing the motion to quash, the respondents have admitted these allegations to be true. Be that as it may, we think they are immaterial in this particular case. The relator's

own testimony fails to justify the particular act with which he is charged, and we are of opinion that the determination of the board was correct, regardless of the motives which actuated it.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.