PEOPLE, *ex rel.* JOHNSON, *v.* COFFEY.

1. PUBLIC OFFICERS—CONSTITUTIONAL LAW—RIGHT OF GOVERNOR TO REMOVE.

Under article 9, § 7, of the Constitution, authorizing the governor to remove any elective or appointive State officer, except legislative or judicial, for cause, the governor may not act at pleasure or caprice, but it is contemplated that such officers shall not be removed except for cause specified, which must exist.

2. SAME—RIGHT OF OFFICIAL TO REVIEW REMOVAL FROM OFFICE.

Under said provision of the Constitution, the governor is the sole tribunal, no review or appeal being provided for, so that, if he acts within the law, his decision is final, but if the rights of an officer have been violated arbitrarily or capriciously, he is entitled to redress, and, therefore, the judiciary will inquire whether the governor has infringed the law.

3. SAME—SUPERINTENDENT OF PUBLIC INSTRUCTION—RIGHT TO RECEIVE ADDITIONAL SALARY.

In view of article 11, § 2, of the Constitution, giving the superintendent of public instruction general supervision of public instruction, and Comp. Laws Supp. 1922, § 5641, requiring him to devote his entire time to the duties of his office, he is not entitled to receive additional salary as director of vocational education, which is a matter of public instruction provided for in Act No. 149, Pub. Acts 1919, accepting the provisions of the Federal statute (Smith-Hughes act), and imposing certain duties upon him in connection therewith.

4. SAME—CONSTITUTIONAL LAW—INCREASING SALARY ILLEGAL.

Action of the board of control of vocational education in voting to give the superintendent of public instruction additional salary for the performance of duties in connection with said vocational education is void under article 16, § 3, of the Constitution, prohibiting increasing of salaries of public officers after election or appointment.

¹Officers, 29 Cyc. p. 1410; 39 L. R. A. (N. S.) 788; 22 R. C. L. 573; 4 R. C. L. Supp. 1471; 5 R. C. L. Supp. 1211; ²Id., 29 Cyc. p. 1409 (Anno); ³Id., 29 Cyc. p. 1424; 21 A. L. R. 256; 22 R. C. L. 534; 4 R. C. L. Supp. 1470; 6 R. C. L. Supp. 1332; ⁴Id., 29 Cyc. p. 1427.

5. SAME—INCOMPATIBLE DUTIES.

The duties of executive officer of vocational education, imposed upon the superintendent of public instruction by Act No. 149, Pub. Acts 1919, are incompatible with the duties of director thereof, to which office he was appointed by the board of control of vocational education, and therefore he was not legally entitled to receive a salary as such officer.

6. SAME—ACCEPTING ILLEGAL COMPENSATION JUSTIFIES REMOVAL FROM OFFICE.

It is generally held that exacting illegal fees or compensation is misconduct for which a public officer may be removed from office.

7. SAME—CRIMINAL INTENT NOT NECESSARY ELEMENT.

Corruption or criminal intent is not necessarily implied in misconduct of a public officer justifying his removal from office.

8. SAME—QUO WARRANTO—REMOVAL OF SUPERINTENDENT OF PUBLIC INSTRUCTION FROM OFFICE JUSTIFIED BY RECORD.

Where the record shows that the superintendent of public instruction had doubts as to the legality of additional salary voted to him as director of vocational education and justifies his acceptance of it by an oral opinion from the attorney general and his assistant that it was legal, which they deny, the finding of the governor against the superintendent of public instruction on said question of fact and his removal from office therefor is binding on the Supreme Court in *quo warranto* proceedings to test the validity of said removal.

*Quo warranto* by the people of the State of Michigan, on the relation of Thomas E. Johnson, against Wilford L. Coffey to try the title to the office of superintendent of public instruction. Submitted December 31, 1926. (Docket No. 136.) Judgment for defendant April 1, 1927.

*George E. Nichols* and *Walter S. Foster*, for plaintiff.

*Clare Retan*, Attorney General, and *B. D. Chandler*, for defendant.

[5]Officers, 29 Cyc. p. 1381; [6]Id., 29 Cyc. p. 1410; [7]Id., 29 Cyc. p. 1410; [8]Id., 29 Cyc. pp. 1409 (Anno), 1410.

PER CURIAM.  On April 5, 1919, Thomas E. Johnson was appointed to fill vacancy in the office of superintendent of public instruction.  He was elected to that office in the April election of that year, and reelected at the succeeding April election of 1921, of 1923 and of 1925.  The term of office is two years from the first day of July following the election.  On September 25, 1926, a petition was filed with Hon. Alex. J. Groesbeck, governor, charging Mr. Johnson with misconduct and malfeasance in office and praying his removal.  A hearing was had.  The governor made findings sustaining the charges, and on November 6, 1926, by his order removed Mr. Johnson from office. Mr. Wilford L. Coffey, the defendant, was appointed to fill vacancy and took the office.  To test the validity of the order for removal, Mr. Johnson, hereinafter called plaintiff, having leave, filed in this court information in the nature of *quo warranto*.

Section 2, art. 11, State Constitution, provides that the superintendent of public instruction—

"shall have general supervision of public instruction in the State.  He shall be a member and secretary of the State board of education.  He shall be *ex officio* a member of all other boards having control of public instruction in any State institution, with the right to speak but not to vote.  His duties and compensation shall be prescribed by law."

Section 5641, Comp. Laws Supp. 1922, provides, in part, that the superintendent of public instruction "shall devote his entire time to the duties of his office." By Act No. 28, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 5764 [1]), the salary of that officer was increased to and fixed at the sum of $5,000 per annum. We quote title and three sections of Act No. 149, Pub. Acts 1919 (Comp. Laws Supp. 1922, §§ 5951 [1-3]):

"An act to accept the requirements and benefits of an act of the sixty-fourth congress of the United States,

approved February twenty-three, nineteen hundred seventeen, known as the Smith-Hughes act, or public act number three hundred forty-seven, relating to appropriations to be made by the Federal government to the several States for the support and control of instruction in agriculture, the trades, industries, and home economics, and for the preparation of teachers of vocational subjects; to designate a State board of control for vocational education; to provide for the proper custody and administration of funds received by the State from such appropriations; and to provide for appropriations by the State and by local school authorities to meet the conditions of said act of congress.

*"The People of the State of Michigan enact:*

"SECTION 1. The provisions of an act of congress enacted by the sixty-fourth congress in the second session thereof known as public act number three hundred forty-seven, entitled 'An act to provide for the promotion of vocational education; to provide for co-operation with the States in the promotion of such education in agriculture and the trades and industries; to provide for co-operation with the States in the preparation of teachers of vocational subjects, and to appropriate money and regulate its expenditure,' are hereby accepted by the State of Michigan as follows:

"(*a*) Appropriations for the salaries of teachers, supervisors and directors of agricultural subjects;

"(*b*) Appropriations for the salaries of teachers of trade, home economics, and industrial subjects;

"(*c*) Appropriations for the preparation of teachers of agricultural, trade, industrial and home economies (economics) subjects.

"SEC. 2. The benefits of all funds appropriated by the Federal government under the provisions of said act are hereby accepted as provided in said act, and provision is herein made under which the State of Michigan will meet such appropriations and provisions.

"SEC. 3. The superintendent of public instruction, the president of the State board of education, the president of the University of Michigan, and the president of the Michigan Agricultural College are hereby constituted as the State board of control for vocational

education as provided in the aforesaid act.    The State superintendent of public instruction shall be the executive officer of the State board of control, and he shall, with the approval of said board, provide for the administration of the provisions of this act.    Said board is charged with the duty and responsibility of co-operating with the Federal board for vocational education in the administration of such act, and is given all power necessary to such co-operation.    The State board of control for vocational education is hereby authorized to incur such expenditures for office administration, traveling and other incidental expenses as it may deem necessary to the proper administration of the funds allotted to the State of Michigan under the provisions of said act."

By section four of the act the State treasurer was made custodian of all "funds for vocational education as provided in said act and in this act."    We quote title of Act No. 211, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 5951 [12]) :

"An act to accept the requirements and benefits of an act of the sixty-sixth congress of the United States, approved June two, nineteen hundred twenty, or public number two hundred thirty-six, entitled 'An act to provide for the promotion of vocational rehabilitation of persons disabled in industry or otherwise and their return to civil employment,' and to provide for the proper custody and administration of funds received by the State under the provisions of that act, and to provide for appropriations by the State at least to meet the conditions of said act of congress."

The act accepted the provisions of the Federal act, and the benefits of all funds appropriated by the Federal government thereunder, and provided that its appropriations and provisions be met and that:

"The State board of control for vocational education, as established by act number one hundred forty-nine of the Public Acts of Michigan of nineteen hundred nineteen, is hereby designated as the board of control to carry out the provisions of the said Federal act."    *   *   *

Again the State treasurer was made custodian of the funds. The fund under the first act is called vocational education fund and under the second act civilian rehabilitation fund. Under these acts the board of control had the right to employ such help as was necessary to carry out the purposes of the legislation. Accordingly, on January 7, 1918, the board engaged Mr. Walter H. French as director of vocational education at a salary of $1,800 per annum. The duties of the director were set forth in a bulletin approved by the Federal board of vocational education, among them:

"(1) He shall co-operate with the executive officer of the board in the preparation of plans for vocational education and in the preparation of suitable bulletins and other literature on the subject for the benefit of supervisors and teachers."

"(6) He shall assist the executive officer in the administrative affairs of the board, keeping proper records and making such reports as may be necessary from time to time and perform such other duties as the State board may direct."

Mr. French resigned. Whereupon the board of control for vocational education, it is claimed, passed the following:

"On motion of Mr. Friday, the executive officer, Thomas E. Johnson, was appointed director for the year beginning July 1, 1922, at a salary of $1,500."

Plaintiff, it is said, accepted the appointment and thence to October 1, 1926, at least, received and accepted the said salary of $1,500 per year, and this in addition to the said salary of $5,000 per year paid to him as superintendent of public instruction.

Mr. K. G. Smith was appointed director of vocational rehabilitation under the second act. He resigned. On May 25, 1925, it is claimed, the said board of control adopted the following:

"Resolved, that Thomas E. Johnson as director be paid $1,200 from the rehabilitation funds, beginning January 1, 1925." * * *

Plaintiff, also, it is said, accepted this appointment and from January 1, 1925, to October 1, 1926, at least, also received and accepted such salary. It is an undisputed fact on the record that plaintiff before acceptance was doubtful of the legality of his taking the salary of $1,500. He "raised the question himself" in conversation with the State supervisor of vocational agricultural education. Plaintiff testified of having consulted Merlin Wiley, then attorney general, and J. E. Converse, then an assistant attorney general, and of having been advised verbally by them that there was no legal objection to his having the salary as director. Plaintiff's testimony in this regard is corroborated by the testimony of other witnesses. But Mr. Wiley and Mr. Converse testified that they did not so advise plaintiff. Plaintiff does not claim to have had any other legal advice on the subject. Our Constitution provides, art. 9, § 7:

"The governor shall have power and it shall be his duty, except at such time as the legislature may be in session, to examine into the condition and administration of any public office and the acts of any public officer, elective or appointive; to remove from office for gross neglect of duty or for corrupt conduct in office, or any other misfeasance or malfeasance therein, any elective or appointive State officer, except legislative or judicial, and report the causes of such removal to the legislature at its next session."

The history, purpose and meaning of this provision are discussed in *Dullam* v. *Willson*, 53 Mich. 392 (51 Am. Rep. 128), which need not be quoted. It was there held that the section is self-executing.

The people have the right to have the officers whom they elect serve out the terms for which they were elected. It is contemplated by the Constitution that

such officers shall not be removed except for the causes specified, and the cause or causes must exist. The governor may not act at pleasure or caprice. *Metevier* v. *Therrien,* 80 Mich. 187.

The provision of the Constitution, basic law made by the people themselves, constitutes the governor the sole tribunal in such cases. No right of appeal or review is given. If he acts within the law his decision is final. But if the right of a faithful officer to hold office has been violated arbitrarily or capriciously by the head of the executive department, he is entitled to redress. To the judiciary in such a case attaches "the delicate and ungrateful duty of inquiring whether the executive had infringed the law." *Dubuc* v. *Vass,* 19 La. Ann. 210 (92 Am. Dec. 526). And see *Dullam* v. *Willson, supra; State, ex rel. Kinsella,* v. *Eberhart,* 116 Minn. 313 (133 N. W. 857, 39 L. R. A. [N. S.] 788, and note, Ann. Cas. 1913B, 785).

We think it is conceded here that this court has jurisdiction of the cause. Counsel for plaintiff say that the question before us is, Had the governor the right, on the proofs taken before him, to make the order for removal? Counsel for defendant say the question is, Does the evidence furnish a legal and substantial basis for the governor's decision? As argued and presented by counsel, the question is of both law and fact. We consider plaintiff's withdrawal of funds or salary, $1,500 per year, as director of vocational education. It is first contended that plaintiff received these moneys as director and not as superintendent of public instruction, and that therefore the order of removal is void. This is answered adversely to plaintiff in *Attorney General* v. *Jochim,* 99 Mich. 358 (23 L. R. A. 699, 41 Am. St. Rep. 606). Plaintiff was not lawfully entitled to such salary. The act of congress and the act of the legislature related expressly to education and dealt with matter of public in-

struction.    The Constitution placed on plaintiff the duty of supervision of public instruction in the State. The duties imposed by the legislature on plaintiff as superintendent of public instruction to serve as member of the board of control of vocational education and as executive officer of the board were germane to his office.    The legislature charged plaintiff with such duties without providing extra compensation therefor as it had right to do, because the duties relating to public instruction were within the scope of his office. *Groesbeck* v. *Auditor General,* 216 Mich. 243 (21 A. L. R. 249).    He was required by the law to discharge all duties properly imposed by law for the compensation provided by law.    The duties which attached to the position of director were likewise germane to the office of superintendent of public instruction.    As executive officer of the board he himself was charged with the duty of carrying out all the purposes of the act, with the exception that he was entitled to such assistance as was reasonably necessary, and this, too, in view of the law that he was to give his entire time to his office.    The case presented is an illegal attempt to increase the salary of the superintendent of public instruction.    Had the legislature itself determined to increase the salary of plaintiff in the manner attempted here by the board of control, the act would have been void because of section 3, art. 16, of the Constitution which provides against increasing salaries of public officers after election or appointment.    The board is in no better position. So the claimed resolution or motion of the board of control in that regard is wholly void.    A case in point is *State, ex rel. McMaster,* v. *Reeves;* 44 S. D. 612 (184 N. W. 1007).    The legislature of that State accepted the provisions of the Federal act relating to vocational education, and set up a board under the act.    The superintendent of public instruction was

made executive officer of the board and given a salary as such of $600 per year. His right to have such salary was challenged and it was held that he was not entitled to it because the duties were germane to his office, and because of a constitutional provision fixing his salary, and because of the further provision against increasing the salary during the term of office. See *Kearney* v. *Board of State Auditors,* 189 Mich. 666; 21 A. L. R. 256, note; *State, ex rel. Younger,* v. *Clausen,* 111 Wash. 241 (190 Pac. 324); *Tayloe* v. *Davis,* 212 Ala. 282 (102 South. 433, 40 A. L. R. 1052).

And to characterize the matter further, it should be noted that the duties of the superintendent acting as executive officer of the board of control were incompatible with the duties of the director. It was the duty of the director under the rules approved by the Federal board to co-operate with and to assist the executive officer. Plaintiff holding both positions could not co-operate with and assist himself.

The director had not an office but an employment. 29 Cyc. p. 1364, and cases cited. *Philips* v. *Commonwealth,* 98 Pa. St. 394. The basis of the employment is, of course, a contract of hire. The contract, as claimed by plaintiff, was made with him by the board of which he was a member. In effect and in law this was a contract made by plaintiff himself with himself. 2 Dillon on Municipal Corporations (5th Ed.), § 773, and cases cited. We need not discuss the question of illegality of the contract. If plaintiff in this manner may take over the position of director of vocational education and receive the compensation incident to that position, and may also take over the position of director of vocational rehabilitation and have the compensation, might he not also in like manner have taken a number of other positions and salaries pertaining to education under the educational bodies of which he was a member by virtue of his

office?    To ask this question is to answer it and to demonstrate the illegality of what was here done.

We conclude that it is clear that plaintiff received and accepted the salary of $1,500 unlawfully.    According to many authorities this would constitute malfeasance in office.    It is said in a note, citing cases, Ann. Cas. 1912C, 147:

"It is generally held that exacting illegal fees or compensation is misconduct for which a public officer may be removed from office."

See *Burt* v. *Board of Sup'rs of Iron Co.,* 108 Mich. 523; *State, ex rel. Wynne,* v. *Examining Board,* 43 Mont. 389 (117 Pac. 77, Ann. Cas. 1912C, 143).    *State* v. *Borstad,* 27 N. Dak. 533 (147 N. W. 380, Ann. Cas. 1916B, 1014); *State, ex rel. Rowe,* v. *District Court,* 44 Mont. 318 (119 Pac. 1103, Ann. Cas. 1913B, 396, 400, note).    Malfeasance in office as cause for removal, defined in 29 Cyc. p. 1410, note, "is the doing of an act wholly unlawful and wrongful."    See *State* v. *McClellan,* 113 Tenn. 616 (85 S. W. 267, 3 Ann. Cas. 992); *Minkler* v. *State,* 14 Neb. 181 (15 N. W. 330).    Corruption or criminal intent is not necessarily implied.    Mechem on Public Offices, § 457.

It is inherent in man that he strive to better his station.    This is manifest in those in office as well as in those not in office.    In *Evans* v. *City of Trenton,* 24 N. J. Law, 764, this is recognized, for the court said:

"The successful effort to obtain office is not infrequently speedily followed by efforts to increase its emoluments."

The law recognizes the tendency and seeks to curb it as regards public officers for reasons of public policy.    A common constitutional provision is that salaries shall not be increased during the term of office, or after election or appointment.    Constitutions frequently limit the amount of salary to be paid.

There are many legislative acts which seek to prevent and to punish the taking of illegal fees.

The courts, too, frown on the taking of moneys from the public treasury, unlawfuly, in the guise of salary, fees, or compensation, and deal more severely with such official misconduct than with many other acts of official misbehavior, different in kind. But, as another contention must be considered, we do not rest decision at this point.

Plaintiff insists most earnestly that, conceding that he received the moneys unlawfully, nevertheless he did so in an honest belief that he was entitled to them, and that therefore he is not guilty of malfeasance.

The governor holds an exalted office. To him, and to him alone, a sovereign people has committed the power and the right to determine the facts in the proceeding before us. His decision of disputed question of fact is final. His finding of fact, if it has evidence to support it, is conclusive on this court. It would be unbecoming in us to impugn his motives, and unseemly and unlawful to invade his discretion.

As has been said, plaintiff and other witnesses testified that the attorney general and an assistant had advised plaintiff orally that he might take legally the moneys in question. This was denied by those officers. The governor resolved this disputed question of fact against plaintiff, and his decision binds us absolutely. This leaves the record in a state unhappy for plaintiff, for such decision has swept away the very foundation of his claim of good faith, that he acted upon advice of the attorney general and an assistant of that officer. Plaintiff himself, at the time, doubted and questioned his right to receive the moneys. This is not disputed. Because of the governor's finding, it therefore is settled by the record that plaintiff, despite his own doubt and questioning and in disregard thereof, accepted the moneys.

That the withdrawals of the public moneys, being so characterized, and being moreover unlawful, constitute malfeasance in office needs no citation of authority.

What has been said makes discussion of matter relative to the rehabilitation fund unnecessary. Nor are we required to comment further upon either the charges or the findings thereon.

Judgment for defendant.