STATE OF NEBRASKA EX REL. CLARENCE A. H. MEYER, ATTORNEY GENERAL, RELATOR, v. FRANK SORRELL, RESPONDENT.

117 N. W. 2d 872

Filed November 16, 1962. No. 35241.

Clarence A. H. Meyer, Attorney General, and John E. Wenstrand, for relator.

Ginsburg, Rosenberg & Ginsburg and Norman M. Krivosha, for respondent.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

This is an original action in quo warranto instituted by the Attorney General to test the right of respondent, Frank Sorrell, to hold the office of member of the Nebraska Liquor Control Commission.

The respondent was appointed a member of the commission and assumed the office on May 25, 1959. The term was for a period of 6 years as provided by section 53-106, R. R. S. 1943. No contention is made as to the regularity of the appointment or that respondent failed to qualify for the office in the manner required by law.

On November 29, 1961, the Governor of Nebraska, after giving notice thereof to respondent, began a hear-

ing to determine whether or not respondent should be removed from the office of liquor control commissioner for violating section 53-111, R. R. S. 1943, in that he was employed by persons engaged in the liquor business, to-wit: Helen Güttinger and Lloyd Copenhaver, while he was holding the office of liquor control commissioner. On January 24, 1962, after the completion of the hearing, the Governor directed the removal of respondent as a member of the commission. Respondent refused to surrender the office, and this action in quo warranto was brought to determine by what warrant, if any, the respondent now holds the office of liquor control commissioner.

The respondent for many years before becoming a member of the Liquor Control Commission was engaged as an auctioneer, real estate broker, and loan agent at Syracuse, Nebraska. He was well acquainted with Lloyd Copenhaver, who held a license to sell beer, issued by the Liquor Control Commission, and operated Cope's Tavern in Syracuse. He was also well acquainted with Helen Güttinger, who held a license to sell package liquor issued by the commission, and who, with her husband Fred Güttinger, operated a business under the name of H. G. Sundries in Talmage, Nebraska. On October 15, 1961, a tavern, on and off sale, beer only, in Syracuse, Nebraska, was advertised for sale in the Omaha World-Herald over the name of the respondent. It is not disputed that the tavern advertised was that of Lloyd Copenhaver. On April 27, 1961, the business of H. G. Sundries in Talmage, including its package liquor business, was advertised for sale over the name of respondent and Mr. and Mrs. Fred Güttinger. These advertisements and the apparent connection of the respondent therewith resulted in a notice and hearing before the Governor on the alleged violation of section 53-111, R. R. S. 1943. The authority of the Governor to hold a hearing after notice, and to remove a member of the Liquor Control Commission if cause is found to exist,

is discussed and decided in State ex rel. Beck v. Young, 154 Neb. 588, 48 N. W. 2d 677, and we shall not repeat the holding of that case.

It is provided in section 53-111, R. R. S. 1943, in part as follows: "No commissioner * * * shall solicit or accept any gift, gratuity, emolument or employment from any person subject to the provisions of this act, * * * and every such person * * * is hereby forbidden to offer to any commissioner * * * any gift, gratuity, emolument or employment. If any commissioner * * * shall violate any of the provisions of this section, he shall be removed from the office or employment held by him."

On November 10, 1961, the Governor caused a notice to be served on respondent requiring him to show cause on November 29, 1961, why he should not be removed from office on the following charge: "The specific charge against you is that you were employed by persons engaged in the liquor business in violation of Section 53-111, R. R. S., 1943, to-wit, Helen Giitenger and Lloyd Copenhaver, while holding the office of State Liquor Commissioner." It is the contention of respondent that the charge was too indefinite to apprise the respondent of the dereliction of duty with which he was charged. There is no merit in this contention. A respondent in a case such as this is not entitled to the same degree of exactness required in court pleadings in stating the charge, although it should be specifically stated with reasonable certainty. Sharps v. Jones, 100 W. Va. 662, 131 S. E. 463. In the instant case, the respondent was charged with having been employed by Helen Giittinger and Lloyd Copenhaver, persons in the liquor business, while he held the office of liquor control commissioner. The charge states the nature of the offense and the name of the persons involved with him. The charge is in the language of the statute and the persons involved are named. The charge is sufficient.

In a hearing conducted by the Governor under the provisions of Article IV, section 12, Constitution of Ne-

braska, and section 53-111, R. R. S. 1943, the charge must be reasonably definite, notice of hearing must be given, an opportunity to defend afforded, and there must be evidence to sustain a ground for removal as specified in the statute. Whether or not these requirements are met is, in a final analysis, a question for the courts. State ex rel. Beck v. Young, *supra.*

It is contended that the Governor in conducting the proceedings did not afford a fair and impartial hearing. The motives of the Governor, or apparent bias and prejudice, if shown, in the discharge of his duty as such, are not the subject of inquiry by the court in this proceeding. State ex rel. Churchill v. Hay, 45 Neb. 321, 63 N. W. 821. The right of a fair and impartial hearing before administrative officers exercising quasi-judicial functions as well as in the courts is generally recognized as one growing out of constitutional guarantees. There is an exception to this rule which is designated in applicable cases as a rule of necessity. Under this rule an officer exercising quasi-judicial functions may act in a proceeding where he is disqualified by interest, relationship, or bias, if his jurisdiction is exclusive and there is no legal provision for calling in a substitute, so that his refusal to act would prevent absolutely a determination of the proceeding. Emerson v. Hughes, 117 Vt. 270, 90 A. 2d 910, 34 A. L. R. 2d 539. See, also, 42 Am. Jur., Public Administrative Law, § 22, p. 312; 67 C. J. S., Officers, § 66d, p. 276; Annotation, 39 A. L. R. 1476.

The licensees, Helen Giittinger and Lloyd Copenhaver, did not testify. Prior to the hearing respondent submitted affidavits by each of them to the Governor in an attempt to induce the Governor not to proceed with the hearing. At the commencement of the hearing the Governor made a statement as to the reasons for the hearing in which he read the two affidavits previously submitted by the respondent. They were not offered in evidence by the Attorney General. During the presentation of his case-in-chief the Attorney General offered

in evidence written statements signed by the two licensees which statements were objected to by respondent as being incompetent. It was contended that these statements were offered for impeachment purposes only. The statements were admitted in evidence. Thereafter the respondent offered in evidence two different affidavits of the licensees to rebut the two written statements placed in evidence by the Attorney General. The statements offered were to impeach the affidavits which must be treated as having been offered by the Attorney General or which were not in evidence at all. In either event, we think the objections to these statements and affidavits should have been sustained under the holding of Wilson v. State, 170 Neb. 494, 103 N. W. 2d 258, which is: "The rule allowing a party to impeach his own witness may not be used as an artifice by which inadmissible matter may be gotten to the jury through the device of offering a witness whose testimony is or should be known to be adverse in order, under the name of impeachment, to get before the jury for its consideration a favorable ex parte statement the witness had made." We shall not, therefore, consider the affidavits and statements referred to in considering the case.

Donald E. Shasteen, a newspaper reporter for the Omaha World-Herald, testified that he called the respondent by telephone on October 28, 1961, regarding the advertisement over his name for the sale of the property of the licensee Copenhaver involved herein. He testified that respondent said he was a licensed real estate broker and that he was acting in that capacity in placing the advertising. He quoted the respondent as saying that he had not solicited the listing and that the property had not been sold; that his relationship as real estate broker would not constitute employment by the tavern owner within the meaning of the state law; and that he was surprised that someone would try to make something out of nothing. Other statements were made indicating that respondent was participating in some

manner in the sale of the property of the licensee.

Frank Rall, a newspaper reporter for the Lincoln Journal, testified that he called respondent on the evening of October 28, 1961, with reference to the advertisement offering the property of licensee Copenhaver for sale. He testified that respondent said he was in the real estate business, that the building listed with his firm was a tavern, that he did not solicit it, and that he knew commissioners cannot solicit for bonds or business. He further stated that he did not intend to violate the law, that he did not sell the property, and that someone is trying to make a mountain out of a molehill.

The respondent vehemently denied he told the two newspaper reporters that he had listed the property or that he had any arrangement to sell the property. He is corroborated in this by his son and wife, who respectively heard his statements made over the telephone to Shasteen and Rall.

Respondent testified that he was called by Copenhaver and Fred Güttinger, the husband of Helen Güttinger, and asked to sell their properties. He stated to each of them that he could not do so because of his membership on the Liquor Control Commission, but that he would help them to find a buyer as a matter of friendship. He admitted that the advertisements were prepared in his office and that he paid for the advertising. He stated that he has never billed the licensees for this expense and that he had no intention of doing so. He testified that he had no listing agreement or any other arrangement with either of the licensees to sell their properties, and that his connection with these matters was gratuitous and nothing more than acts of friendship toward long-time friends.

The evidence shows that respondent was asked, when undertaking to serve someone, if he entered into a listing agreement whenever he undertook to sell somebody's property or business. His answer was: "We have to before we can advertise it."

It is the contention of the respondent that the evidence does not show that he solicited or accepted "employment" within the meaning of section 53-111, R. R. S. 1943. He contends that the term "employment" as contained in the statute is used in the sense of benefit and is simply an extension of the various ways that benefits can be rendered, that is by gift, gratuity, emolument, and the like. From this the respondent argues that a gratuitous employment is not violative of the statute since he neither solicited nor accepted anything from the licensees. While the argument is an ingenious one, its logic is not overwhelming. It is the status and relationship that is condemned, not the nature of the benefit received. It would require a strained interpretation of the statute to hold that a commissioner could not solicit nor accept employment but that he could accept it on a gratuitous basis. Whether or not respondent was employed to perform a service for the licensees is a question of fact. In considering the evidence of the witnesses Shasteen and Rall, it will be noted nothing was said by the respondent that he was performing gratuitous acts for the licensee. The trier of facts could well find from all the facts and circumstances that the gratuity phase of the case was an afterthought to meet the exigencies of the litigation. We think there is competent evidence in the record sufficient to sustain the findings made by the Governor. True, the evidence is in direct conflict, but this can avail the respondent nothing under applicable rules.

The general rule is: If there is evidence to support the decision of the Governor in removing an officer, and the cause for removal is one on which the Governor is authorized to act, his decision on disputed facts is conclusive; and not only is this so, but if he acts within his jurisdiction the courts will not, under the above circumstances, inquire into the weight and credibility of the evidence to support the charge, but will regard the finding of the Governor as final and not subject to

review by the courts. Mathews v. Hedlund, 82 Neb. 825, 119 N. W. 17; Munk v. Frink, 81 Neb. 631, 116 N. W. 525, 17 L. R. A. N. S. 439; People ex rel. Johnson v. Coffey, 237 Mich. 591, 213 N. W. 460, 52 A. L. R. 1; Craig v. Jensen, 66 S. D. 93, 278 N. W. 545.

A further contention is advanced that the statute contemplates the rendition of service to licensees and to hold otherwise would reduce the statute to an absurdity. We quite agree with respondent that the Liquor Control Commission shall render service to the state and licensees alike in the administration of the Liquor Control Act. But this is far different from a case where a commissioner renders personal service to a licensee which is wholly disconnected from his duty as a public officer. The distinction is so plain that we shall not dignify this contention by further discussion.

It is further contended that a declaratory judgment action filed in the district court for Lancaster County prior to the hearing by the Governor, and amended after the Governor's removal order to allege such additional proceedings, has the effect of depriving this court of its original jurisdiction in quo warranto. This contention appears to have been previously settled by this court. In Phelps County v. City of Holdrege, 133 Neb. 139, 274 N. W. 483, we said: "The declaratory judgment law is not a substitute for new trial or appeal, nor does it operate to supersede former adjudications or proper proceedings already pending in a court having jurisdiction of parties and subject-matter." In Strawn v. County of Sarpy, 146 Neb. 783, 21 N. W. 2d 597, this court said: " '* * * the rule * * * seems to be that jurisdiction of a declaratory judgment action will not be entertained if there is pending, at the time of the commencement of the declaratory action, another action or proceeding to which the same persons are parties, in which are involved and may be adjudicated the same identical issues that are involved in the declaratory action.' Annota-

tion, 135 A. L. R. 934." The contention of respondent on this point is without merit.

The purpose of section 53-111, R. R. S. 1943, is set forth in State ex rel. Beck v. Young, *supra,* in the following language: "By section 53-111, R. S. 1943, the Legislature evidenced an intention to prohibit a member of the liquor control commission to deal with persons subject to the regulation and control of the commission. * * * The purpose of the statute is to remove the temptation on the part of a commissioner to use his influence with those under the regulation and control of the commission for private gain. Experience shows that to permit such dealings has a tendency to create partiality and discrimination on the part of the officer in administering the functions of his office. It involves a question of public morals in the administration of government of which the supreme executive power could properly take cognizance in the performance of his constitutional duty to take care that the laws be faithfully executed and the affairs of the state efficiently and economically administered."

The record shows that respondent had notice, a specification of charges, and a hearing, all in accord with legal requirements. There is competent evidence in the record to sustain the charges made. The order of removal is regular and binding. The respondent, therefore, has not been an occupant of the office of liquor control commissioner since the issuance of the order of removal by the Governor. A judgment of ouster against the respondent is hereby entered. A proper writ is allowed to enforce the order of this court if it be necessary.

JUDGMENT OF OUSTER.