ELIEFF v MARQUARDT

ELIEFF v GETTYSBURG ESTATES DEVELOPMENT
COMPANY, INC.

MUNICIPAL CORPORATIONS—OFFICERS OF INSTITUTION—CONTRACTS—
PERSONAL INTEREST—TOWNSHIPS—TOWNSHIP OFFICERS—STAT-
UTES.

A statute which prohibits the officers of educational, charitable,
penal, pauper, or reformatory institutions from having any
personal interest in any contracts entered into by the institu-
tion is inapplicable to an easement agreement between a town-
ship and individual township board members (MCLA 750.122;
MSA 28.317).

Appeal from Eaton, Richard Robinson, J. Sub-
mitted March 2, 1976, at Lansing. (Docket Nos.
25632, 25633.) Decided May 28, 1976. Leave to
appeal denied, 397 Mich —.

Complaints by Gordon Elieff against Alfred Mar-
quardt and Delta Township and against Gettys-
burg Estates Development Company, Inc., and
Delta Township to set aside certain easement
agreements entered into between the defendant
township and defendants Marquardt and Gettys-
burg. Judgment was entered declaring the agree-
ments null and void. Defendants Marquardt and
Gettysburg appeal. Reversed and remanded.

*Dickinson, Wright, McKean, Cudlip & Moon* (by
*Judson Werbelow)*, for plaintiff.

*Glasser, Rhead, McLean & Campbell,* for defend-
ant Delta Township.

REFERENCE FOR POINTS IN HEADNOTE
56 Am Jur 2d, Municipal Corporations, Counties, and Other Politi-
cal Subdivisions §§ 294–303.

*Sinas, Dramis, Brake, Turner, Boughton & McIntyre, P. C.,* for defendants Marquardt and Gettysburg Estates Development Company, Inc.

Before: D. F. Walsh, P. J., and J. H. Gillis and R. M. Maher, JJ.

R. M. Maher, J. Plaintiff, a resident of the Charter Township of Delta, brought a suit in Eaton County Circuit Court to set aside certain easement agreements entered into between defendant township and defendants Marquardt and Gettysburg Estates Development Co., Inc. (Gettysburg). From the court's judgment that the agreements were null and void, defendants Marquardt and Gettysburg appeal.

The facts leading to this litigation are not in dispute. In late 1965 and early 1966, the township was granted sewer system easements by Marquardt and Gettysburg in return for the township's promise to allow unlimited sewer hookups to defendants. At the time of the agreements, Marquardt and Lyle Benjamin, a principal stockholder and officer of Gettysburg, were members of the Delta Township Board, the political organ approving the agreements. Marquardt was additionally township supervisor. The trial judge found that neither Marquardt nor Benjamin voted on his individual easement agreement.

Plaintiff brought suit in 1971, claiming, in his amended complaints, that "plaintiff, and all others similarly situated, will suffer substantial and irreparable damages if defendant Alfred Marquardt [and defendant Gettysburg Estates Development Co., Inc.] * * * are not required to pay capital connections charges and sewer tap charges". His complaint did not plead any particular legal theory of the illegality of the agreements. Subse-

quently, in briefs filed with the court, plaintiff
indicated that the agreements were illegal because
violative of former MCLA 750.122; MSA 28.317[1]
and because violative of non-statutory principles of
agency and breach of fiduciary duty.

The trial court accepted plaintiff's statutory the-
ory of illegality, but expressed no opinion on the
common law theory of illegality. Because we con-
clude that the easement agreements violated no
statutory provisions, we must reverse the trial
court's opinion. However, because there is a need
for further consideration of defendant's common
law fiduciary theories, we remand for further pro-
ceedings.

Turning to the statutory theory, we note that
plaintiff, defendant township, and the trial court
point to the substantive prohibitions of former
MCLA 750.122; MSA 28.317. The statute, set out
in the margin,[2] only concerns statutory regulation
of contracts made by officers of public institutions,
with the institution limited in character to "educa-
tional, charitable, penal, pauper or reformatory".
The statute's prohibitions do not concern contracts
made by township trustees, supervisors or superin-
tendents. However laudable the statutory purpose

---

[1] MCLA 750.122; MSA 28.317 was repealed by PA 1968, No 317, § 9,
eff Sept 1, 1968.

[2] "Sec. 122. Officers of public institutions not to be interested in
contracts made therewith—No trustee, inspector, regent, superin-
tendent, agent, officer or member of any board or commission having
control or charge of any educational, charitable, penal, pauper, or
reformatory public institution of this state, or of any municipality
thereof, shall be personally, directly or indirectly, interested in any
contract, purchase or sale made for, or on account, or in behalf of any
such institution, and all such contracts, purchases or sales shall be
held null and void; nor shall any such officer corruptly accept any
bribe, gift or gratuity whatever from any persons interested in such
contract; and it is hereby made the duty of the governor or other
appointing power, upon proof satisfactory of a violation of the provi-
sions of this section, to immediately remove the officer or employe
offending as aforesaid; and the offender shall be guilty of a felony."

of regulating an official's interest in institutional contracts, the statute is inapplicable to the easement agreement between the township and defendants Marquardt and Gettysburg. Because plaintiff specifically disavows the applicability of a newer statute, MCLA 15.322, MSA 4.1700(52), and because we have a substantial doubt that the statute would prohibit this particular conduct,[3] we refrain from voiding the easement agreements on any other statutory theory.

The only doctrine of law that might call for invalidation of the agreements is amorphous common law doctrine concerning governmental conflict of interest. A 1968 opinion of the Michigan Attorney General confidently states:

"Under the common law, the rule is well established that a contract made by a public officer is against public policy if it interferes with the unbiased discharge of his duty to the public or if it places him in a position inconsistent with such duty or even if it has a tendency to induce him to violate such duty." OAG, 1967–68, No. 4555, p 36 (April 12, 1967), citing 43 Am Jur, Public Officers, § 294, p 103.

We are not as confident as the Attorney General in concluding that this is the common law of Michigan. The advisory opinion cited three cases to support its assertion. Two of these cases invalidated contracts because of the existence of the city

---

[3] The modern statute regulating institutional contracts with public servants, MCLA 15.321, *et seq.;* MSA 4.1700(51) *et seq.,* specifically exempts from coverage paid public servants who work less than an average of 25 hours per week for a public entity provided those servants disclose their primary interests and provided that the contract is approved by a vote of two-thirds of the full membership. The record suggests compliance with these provisos. Moreover, any contract is at best voidable and may only be invalidated by an action brought by the public entity, not by an individual plaintiff. In addition, the agreements complained of here were finalized before the passage of the act.

charter provisions prohibiting self dealing. *Ferle v Lansing,* 189 Mich 501; 155 NW 591 (1915), *Woodward v City of Wakefield,* 236 Mich 417; 210 NW 322 (1926). Both cases, in determining that the contracts in question were void under charter provisions, included gratuitous references to "public policy". Only in one case cited by the Attorney General, *People on relation of Aldert Plugger and others v Township Board of Overyssel,* 11 Mich 222 (1863), does one find an attempted articulation of a common law fiduciary duty concerning public officers' purported contracts with public institutions.

In *Overyssel,* only three of the four Supreme Court justices participated. The three justices all concurred in concluding that mandamus did not lie to compel certain township boards to comply with contracts entered into between the boards and board members. Each justice separately debated whether a contract between an official and a public institution is void or voidable. Justices MANNING and CHRISTIANCY appeared to treat the contract as void, "unless affirmed by the opposite party". 11 Mich at 225 (MANNING), 11 Mich at 228 (CHRISTIANCY). Justice CAMPBELL appeared to disagree, contending initially that these contracts are voidable at the option of the party affected, and apparently concluding that the decision to invalidate must be based on a showing that a party has in fact been affected. 11 Mich at 229. We are not certain if the justices, despite their language of disagreement, differed in their statements of the doctrine. See *McKay v Williams,* 67 Mich 547, 551; 35 NW 159 (1887).

In any event, the ambiguous dicta of two or three Supreme Court justices found in separate opinions written 113 years ago is hardly the most

reliable footing for constructing a doctrine of government officials' fiduciary duties.

There is some scattered commentary in Michigan, uncited by the Attorney General, concerning a public official's fiduciary duties. In *People ex rel Johnson v Coffey,* 237 Mich 591; 213 NW 460 (1927), the court upheld the Governor's discharge of the superintendent of public instruction after the superintendent used his position as member of the board of control of vocational education to gain appointment as director of vocational education. The court there stated:

"The director had not an office but an employment. The basis of the employment is, of course, a contract of hire. The contract, as claimed by plaintiff, was made with him by the board of which he was a member. In effect and in law this was a contract made by plaintiff himself with himself. We need not discuss the question of illegality of the contract. If plaintiff in this manner may take over the position of director of vocational education and receive the compensation incident to that position, and may also take over the position of director of vocational rehabilitation and have the compensation, might he not also in like manner have taken a number of other positions and salaries pertaining to education under the educational bodies of which he was a member by virtue of his office? To ask this question is to answer it and to demonstrate the illegality of what was here done." 237 Mich at 600–601. (Citations omitted.)

In *Baars v Township of Laketon,* 163 Mich 665; 129 NW 7 (1910), one finds the clearest contention that a public officer cannot contract with himself. A highway commissioner was not allowed to recover compensation for the use of his own team that had been employed in highway grading. The court made the black letter assertion:

"It is a well-settled rule that an agent cannot bind his

principal in a contract which the agent makes with himself, and we have decided that the doctrine extends to public officers."

We conclude that there is a common law doctrine concerning the ability of a public official to contract with the public institution he serves. We are unwilling, however, to establish the finer points of this doctrine at this juncture, given the absence of a lower court ruling and findings of fact relevant to this doctrine. We decline to rule at present whether or not the easement agreements were violative of the fiduciary duties of defendants Marquardt and/or Mr. Benjamin.

We urge the parties to research thoroughly this area of law, concentrating especially on the legal significance of contract approval by a disinterested majority of the public institution, the legal significance of the fairness of the contract, the distinction between void and voidable contracts, and the classes of plaintiffs that may challenge public officers' contracts. On remand, the trial court should make findings of fact pertinent to the common law doctrine and should rule on the common law. We do not retain jurisdiction.

Reversed and remanded. No costs, a public question.