No. 81-114

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

STATE OF MONTANA ex rel.
DANIEL J. SHEA,

Appellant and Relator,

vs.

THE JUDICIAL STANDARDS COM-
MISSION, and its Members,
HON. A. B. MARTIN, Chairman;
HON. L. C. GULBRANDSON, CARL M. DAVIS,
GEORGE B. SCHOTTE, and JEAN R. ANDERSON,

Respondents.

Appeal from:  District Court of the First Judicial District,
In and for the County of Lewis and Clark
Honorable Gordon Bennett, Judge presiding.

Counsel of Record:

For Appellant:

Robert J. Emmons argued, Great Falls, Montana

For Respondents:

Church, Harris, Johnson and Williams, Great Falls, Montana
Douglas C. Allen, argued, Great Falls, Montana

Submitted:  October 23, 1981

Decided:  March 18, 1982

Filed:  MAR 18 1982

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This is an appeal by the relator, Daniel J. Shea, from an order of the District Court, First Judicial District, Lewis and Clark County, denying him a writ of prohibition, mandamus, review, or other appropriate writ, in relation to proceedings concerning him now pending before the Judicial Standards Commission.

Daniel J. Shea is a justice sitting on the Montana Supreme Court. He was elected to his position on the Court in the general election of 1976, and after qualifying for the office as required by law, he assumed the duties and responsibilities of his office, and continues in that office to the present time.

On December 28, 1979, the following document was issued by the Judicial Standards Commission, signed by all its members, and served upon Daniel J. Shea on December 31, 1979:

"BEFORE THE JUDICIAL STANDARDS COMMISSION
OF THE STATE OF MONTANA

| | | |
|---|---|---|
| INQUIRY CONCERNING JUSTICE | ) | Notice of Partial |
| | ) | Dismissal, Complaint and |
| DANIEL J. SHEA | ) | Notice of Institution of |
| | ) | Further Proceedings |

"TO: Justice Daniel J. Shea
      Associate Justice of the
      Supreme Court of Montana

"You Are Hereby Notified that preliminary
investigation has been completed concerning
the charges made against you by the Judicial
Standards Commission by that certain document
entitled 'Notice of Preliminary Investigation',
dated August 24, 1978.

"As a result of that investigation the Com-
mission finds:

"1.   The allegation that you willfully and
persistently failed to perform your share of

-2-

the work load is not supported by the current records of the Supreme Court.

"2. That the allegation that you used your position as a Justice of the Supreme Court to intimidate some of your creditors is not supported by any evidence.

"3. That good cause exists to institute further proceedings to determine if you have acted contrary to Canons 4 and 19 of the Canons of Judicial Ethics, resulting in 'conduct prejudicial to the administration of justice that brings the judicial office into disrespect.' (Rule 9 of the Rules of the Judicial Standards Commission.)

"Now, Therefore, It Is Hereby Ordered that the allegations referred to in paragraphs numbered (1) and (2), above, be dismissed and that further proceedings be instituted concerning the remaining charges contained in the 'Notice of Preliminary Investigation.'

"The specific grounds for the charges still pending are as follows:

"Canon 4 provides:

"'Avoidance of Impropriety. A judge's official conduct should be free from impropriety and the appearance of impropriety; he should avoid infractions of law; and his personal behavior, not only upon the Bench and in the performance of judicial duties, but also in his everyday life, should be beyond reproach.'

"Canon 19 provides in part:

"'Judicial Opinions. It is of high importance that judges constituting a court of last resort should use effort and self-restraint to promote solidarity of conclusion and the consequent influence of judicial decision. A judge should not yield to pride of opinion or value more highly his individual reputation than that of the court to which he should be loyal. Except in case of conscientious difference of opinion on fundamental principle, dissenting opinions should be discouraged in courts of last resort.'

"The circumstances reported to the Commission and which may constitute a violation of the aforesaid judicial canons, bringing the judicial office into disrespect, are as follows:

"1. Parking Ticket Episode.

"Automobiles registered in the name of Doris Shea, your wife, accumulated 60 parking tickets over a

-3-

period of approximately a year and a half from June of 1976 throughout 1977. These tickets remain unpaid and Doris Shea was charged in the City Court of the City of Missoula with the violations.

"Doris Shea has reportedly denied that she committed the violations. It further appears from the investigative report that you were seen parking one of the ticketed vehicles on one or more occasions but have never accepted responsibility for any of the violations. While Doris Shea may have constitutional grounds for refusing to pay the parking tickets, your failure to acknowledge responsibility for the charges against your wife, and your failure to observe the parking meter ordinance may constitute a violation of Canon 4 that warrants disciplinary action.

"2.  Intemperate Language.

"In a dissenting opinion written by you in the case of State vs McKenzie 581 P.2d 1205, 1235, you employ the following language with reference to the majority of the court.

"'This court no more granted a fair review to defendant than the citizens of Pondera County could have given him a fair trial. The people of Montana can be well advised there is no law in the State of Montana.' P. 1236

"'It is intellectual dishonesty for the majority not to recognize that the combination thereof is a radical departure from existing interpretations of constitutional law in this state - - -' P. 1238

"'And this is not the only manner in which the opinion is rather slippery with the facts.' P. 1250

"'The dishonesty of the majority opinion is manifest - - -' P. 1260

"The foregoing quoted excerpts appear to be in violation of Canons 4 and 19 of the Canons of Judicial Ethics and may constitute conduct prejudicial to the administration of justice that brings the judicial office into disrespect.

"You are hereby notified that you may have fifteen days after service of this notice to file a verified answer with the commission addressed to the Chairman of the Commission. Following receipt of your answer the Commission will decide what further action is to be taken.

"For your information reference is made to Rule 7 of the Rules of the Commission, providing that all proceedings before the Commission shall be confidential and only loses their confidential character when the record is filed with the Supreme Court.

-4-

"Reference is also made to Section 3-1-1109 MCA
which provides that a judicial officer is disqualified
from acting as such without loss of salary while a
'formal proceeding' is pending. By Rule 2(j) of
the Commission's Rules, 'formal proceeding' is
defined as the proceedings that follow the Com-
mission's recommendation to the Supreme Court.

"Dated this 28th day of Dec., 1979."

On February 22, 1980, Daniel J. Shea filed in writing
with the Judicial Standards Commission his motions and brief
asserting the following grounds for dismissal of the proceedings
before the Judicial Standards Commission:

1. The Judicial Standards Commission is without jurisdiction
to investigate the conduct of a judge which results in
"conduct prejudicial to the administration of justice that
brings the judicial office into disrespect."

2. The Commission violates section 3-1-1106, MCA, by
proceeding against him without a verified complaint.

3. The Commission itself has no power to proceed to
investigation without receiving from some party a verified
complaint.

4. Canons 4 and 19 of the Canons of Judicial Ethics
are vague or overbroad when used to support the charges of
the Judicial Standards Commission.

The Judicial Standards Commission denied the motions of
Daniel J. Shea, and set the matter for formal hearing before
the Commission. However, the Commission granted Daniel J.
Shea 30 days from the date of the denial in which to petition
for an original writ of mandate or other appropriate writ.

Daniel J. Shea petitioned the District Court of the
First Judicial District for Lewis and Clark County for
relief. That court granted alternative writs of prohibition
and mandamus and writ of review, and stayed the proceedings
before the Judicial Standards Commission, pending a hearing

-5-

which was held on January 20, 1981. The Commission had filed its response, and moved for the dismissal of the petition and the quashing of all writs on November 10, 1980. The matter was finally deemed submitted to the District Court on February 3, 1981.

On February 23, 1981, the District Court dismissed Daniel J. Shea's petition for writ of prohibition, mandamus and certiorari, and quashed the alternative writs. It is from that order of dismissal by the District Court that Daniel J. Shea here appeals.

### THE ISSUES

We find the dispositive issues in this cause to be as follows:

1. Is the Judicial Standards Commission subject to the power of the Supreme Court to issue writs of prohibition, mandamus, certiorari, or alternative writs?

2. Does Rule 9(a) of the Judicial Standards Commission exceed the constitutional power of the Judicial Standards Commission?

3. Is a verified complaint a requisite for Judicial Standards Commission proceedings?

4. Are the charges made by the Judicial Standards Commission against Daniel J. Shea included in the phrase "willful misconduct in office?"

### THE JUDICIAL STANDARDS COMMISSION

The provision in the 1972 Montana Constitution for a Judicial Standards Commission arose from a void at that time in our system as to the removal of corrupt, venal or incompetent judges. Before 1972, a judge could be removed from office only by impeachment through the State legislature, unless the electorate turned him out of office. Impeachment, Art. V, §

-6-

17, 1889 Montana Constitution, was limited to "high crimes and misdemeanors, or malfeasance in office." For those officers not subject to impeachment, the legislature was empowered by the 1889 Montana Constitution to provide for their removal for "misconduct or malfeasance in office." Art. V, § 18, idem.

The full text of the 1972 constitutional provision then in effect for the Judicial Standards Commission (Art. VII, § 11) is as follows:

> "Section 11. Removal and discipline. (1) The legislature shall create a judicial standards commission consisting of five persons and provide for the appointment thereto of two district judges, one attorney, and two citizens who are neither judges nor attorneys.
>
> "(2) The commission shall investigate complaints, make rules implementing this section, and keep its proceedings confidential. It may subpoena witnesses and documents.
>
> "(3) Upon recommendation of the commission, the supreme court may:
>
> "(a) Retire any justice or judge for disability that seriously interferes with the performance of his duties and is or may become permanent; or
>
> "(b) Censure, suspend, or remove any justice or judge for willful misconduct in office, willful and persistent failure to perform his duties, or habitual intemperance."

In considering the adoption of that provision, the constitutional convention spoke little of the provisions relating to malfeasance or misconduct in office. Tr. 3469 to 3484. The convention seemed concerned especially with tactfully removing judges from office who may have become disabled or incompetent by reason of age. In speaking for the adoption of the amendment, Delegate Aronow stated in part:

> ". . . This is a committee which we created in the majority part of the committee report, modeled somewhat after New Mexico. It has been revised;

-7-

some things have been taken out of California
. . ." Tr. 3471.

In 1973 the legislature, following the directions of the constitutional provision, provided for the creation and composition of the Judicial Standards Commission. With respect to investigations, and action by the Supreme Court, the legislature provided, inter alia:

> "3-1-1106. Investigation of judicial officers --hearing--recommendations. (1) The commission or any citizen of the state may, upon good cause shown, initiate an investigation of any judicial officer in the state by filing a verified written complaint with the commission.

> "(2) The commission, after such investigation as it considers necessary and upon the finding of good cause, may:

> "(a) order a hearing to be held before it concerning the censure, suspension, removal, or retirement of a judicial officer; or

> "(b) request the supreme court to appoint one or more special masters who are judges of courts of record to hear and take evidence and to report to the commission.

> "(3) If after hearing or after considering the record and report of the masters the commission finds the charges true, it shall recommend to the supreme court the censure, suspension, removal, or retirement of the judicial officer.

> "3-1-1107. Action by supreme court. The supreme court shall review the record of the proceedings and shall make such determination as it finds just and proper and may:

> "(1) order censure, suspension, removal, or retirement of a judicial officer; or

> "(2) wholly reject the recommendation."

Following the appointment and organization of the Commission, it adopted rules, which provide in part as follows:

> "Rule 9        PRELIMINARY INVESTIGATION

> "a. Upon receipt of Verified Statement. The Commission, upon receiving a verified statement, not obviously unfounded or frivolous, alleging facts indicating that a judge is guilty of action occurring during, or not more than six

-8-

years prior to the commencement of, his current
term that constitutes willful misconduct in
office, willful and persistent failure to perform
his duties, habitual intemperance, or conduct
prejudicial to the administration of justice
that brings the judicial office into disrepute,
or that he has a disability that seriously
interferes with the performance of his
duties, and is, or is likely to become permanent,
shall make a preliminary investigation to determine
whether further proceedings should be instituted
and a hearing held.

"b.  On Own Motion.  The commission, without
receiving a verified statement, may make
such a preliminary investigation on its own
motion."  (Emphasis added.)

DISCUSSION

1.  Is the Judicial Standards Commission subject to

the power of the Supreme Court to issue writs of prohibition,

mandamus, certiorari, or alternative writs?

The first question to be decided by us is whether the

Judicial Standards Commission is so inherently an independent

constitutional body that it is not subject to writs or the

authority of this Court in the course of its proceedings. If

it is not so subject, there is no point in further dis-

cussion in this case because if this Court has no such

power, the matter ends there.

The District Court wrestled with this problem.  It

pointed out that while the Commission is making its investiga-

tion, and to the point where it makes recommendations to the

Supreme Court, the Supreme Court has been given no con-

stitutional function whatever.  Art. VII, § 11(1), (2).  After

making its recommendation, the Judicial Standards Commission

has no constitutional function.  Art. VII, § 11(3a), (3b).

On this basis, the District Court concluded that the functions

of the Commission and of the Supreme Court were "clear

cut and discrete."

-9-

The District Court further noted that since any recommendation of the Judicial Standard Commission must eventually be passed upon by this Court, that in itself is an adequate remedy, and insulates the proceedings of the Judicial Standards Commission from any intervening interruption by either a District Court or the Supreme Court. In An Anonymous Town Justice v. State Commission (1978), 409 N.Y.S.2d 198, it was found that the proceedings of the New York Commission were administrative in that it did not make final decisions, and were therefore beyond trial court review.

Under Montana statutes the supreme court or a district court may issue a writ of review, when an ". . . inferior tribunal . . . exercising judicial functions has exceeded the jurisdiction of such tribunal . . . and there is no appeal or, in the judgment of the court, any plain, speedy, and adequate remedy." Section 27-25-102, MCA. There is no question that the Judicial Standards Commission is exercising judicial functions (see our recent opinion in State Bar of Montana v. Krivec (1981), ___ Mont. ___, 632 P.2d 707, 38 St.Rep. 1322, for a discussion of the exercise of judicial functions.) We have held, however, that a writ of review is generally not properly granted where the matters over which review is sought are pending or undetermined. State v. District Court (1933), 93 Mont. 439, 444, 19 P.2d 220, 222.

A writ of mandamus may be issued by the Supreme Court or District Court to a tribunal to compel the performance of an act which the law specifically enjoins as a duty resulting from an office. Section 27-26-102, MCA. The purpose of Daniel J. Shea in filing his petition with the District Court was to stop the action of the Judicial Standards Commission; therefore, mandamus does not apply.

-10-

A writ of prohibition may issue from the Supreme Court or the District Court to any tribunal, whether exercising judicial or ministerial functions, when the proceedings are without or in excess of the jurisdiction of the tribunal. Section 27-27-101, MCA. The writ may issue in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law. Section 27-27-102, idem. However, if appeal is available, but is neither speedy nor adequate, a writ of prohibition may issue. State v. District Court of the Eleventh Judicial Dist. (1957), 131 Mont. 397, 402, 310 P.2d 779, 780, 64 A.L.R.2d 1324, 1327. In the case at bar, no appeal is granted, except for the review by the Supreme Court upon the final recommendation of the Judicial Standards Commission. It appears to us, therefore, Daniel J. Shea's remedy by appeal is inadequate, he has no other plain, speedy or adequate remedy, and we have the power to issue a writ of prohibition to enjoin the Commission if, indeed, it is acting in excess of its jurisdiction.

2. Does Rule 9 of the Judicial Standards Commission exceed the constitutional power of that Commission?

We have set forth in full above, Rule 9(a) and (b) of the Judicial Standards Commission. As will be noted, it includes a statement that the Commission will make a preliminary investigation if it receives a verified statement that a judge is guilty of "conduct prejudicial to the administration of justice that brings the judicial office into disrepute."

Daniel J. Shea contends that the Judicial Standards Commission, in adopting that portion of the Rule, exceeded its jurisdictional powers under the constitutional provision establishing the Judicial Standards Commission, and that in

-11-

now proceeding against him on that ground, it is acting in excess of its jurisdiction.

Art. VII, § 11, 1972 Montana Constitution establishing the Judicial Standards Commission, is not so much a limitation upon the powers of the Commission as it is a limitation upon the power of this Court to act in matters of judicial discipline. The Commission's power to investigate complaints, to make rules implementing the constitutional section, and its power to issue subpoenae is not hedged with constitutional limits of any kind. The safety valve which is placed upon the wide-angled powers of the Commission is the limitation on this Court to act on the recommendations of the Commission. Upon its recommendation, we may retire a disabled justice or judge; or we may censure, suspend, or remove a judge for (1) willful misconduct in office, (2) willful or persistent failure to perform his duties, or (3) habitual intemperance.

The constitutional article and statute do not give this Court the power to censure, suspend, or remove a justice or a judge for "conduct prejudicial to the administration of justice that brings the judicial office into disrepute." Yet that is the conduct charged against Daniel J. Shea in the complaint. Were the Commission to recommend discipline against Daniel J. Shea based upon that charge, we would have no power to act under Art. VII, § 11. A basic rule of statutory (and constitutional) construction is that the role of a judge in construing a provision is not to insert what has been omitted, or to omit what has been inserted. The standard of conduct charged against Daniel J. Shea before the Judicial Standards Commission omits any basis upon which we can act, and inserts a basis not found in Art. VII, § 11, upon which we may be called to act.

Thus, if a recommendation should come to us from the Commission, stating that Daniel J. Shea is guilty of "conduct prejudicial to the administration of justice that brings the judicial office into disrepute", in that he used intemperate language in McKenzie, and/or that he failed to acknowledge personal responsibility for the parking tickets charged against his wife, we could do nothing. We can only censure, suspend, or remove judicial officers upon the stated grounds in Art. VII, § 11 in this case, misconduct in office.

We noted above that in the transcript of the 1972 constitutional convention, Delegate Aronow in speaking for the adoption of what is now Art. VII, § 11, of that constitution, stated that the proposed article and section had been modeled after the laws of New Mexico. In examining the provisions of New Mexico for its Judicial Standards Commission, we find that it provides for investigation "as to willful misconduct in office, persistent failure or inability to perform a judge's duties, or habitual intemperance of any justice, judge . . ." and for "a disability seriously interfering with the performance of his duties which is, or is likely to become, of a permanent character;. . ." Section 34-10-2.1, N.M. Statutes (1978). There is no mention in the New Mexico statutes of "conduct prejudicial to the administration of justice that brings the judicial office into disrepute."

Delegate Aronow also mentioned that they had looked at the provisions in California, and that "some things have been taken out of California." Tr. 3471. Indeed it is found in Art. VI, § 18(c), California Constitution, as it stood in 1972, that:

-13-

"On recommendation of the Commission on
Judicial Qualifications the Supreme Court
may (1) retire a judge for disability that
seriously interferes with the performance of
his duties and is likely to become permanent,
and (2) censure or remove a judge for action
occurring not more than 6 years prior to the
commencement of his current term that constitutes
wilful misconduct in office, wilful and
persistent failure to perform his duties,
habitual intemperance, or conduct prejudicial
to the administration of justice that brings
the judicial office into disrepute." (Emphasis
added.)

It is quite apparent therefore, that California has

adopted a broader provision for judicial discipline than

was adopted by the 1972 Montana Constitution. It further

is apparent that Rule 9(a) of the Montana Judicial Standards

Commission is patterned after the California-type constitutional

provision rather than on the 1972 Montana constitutional

provision.

Rule 9 of the Montana Judicial Standards Commission is

an exact replica of Rule 9 adopted by the Wyoming Commission

on Judicial Supervision. However, Wyoming's 1972 state

constitution, Art. V, § 6(e)(2), provides as follows:

". . . censure or remove a judge for action occurring
during, or not more than 6 years prior to the
commencement of, his current term that constitutes
wilful misconduct in office, wilful and
persistent failure to perform his duties, habitual
intemperance, or conduct prejudicial to the admin-
istration of justice that brings the judicial
office into disrepute." (Emphasis added.)

The distinction is important. The California Supreme

Court in Geiler v. Commission on Judicial Qualifications

(1973), 110 Cal.Rptr. 201, 209, 515 P.2d 1, 9, stated:

"As indicated above, the commission in the
instant matter concluded that the conduct
proven in the previously discussed specifications
constituted 'willful misconduct in office' and
'conduct prejudicial to the administration of
justice that brings the judicial office into
disrepute.' As we have noted above, the second
ground for imposing discipline was added to the
Constitution in 1966. We believe this mandates

-14-

our construing 'willful misconduct in office' as
connoting something graver than the 'lesser
included offense' of 'conduct prejudicial to the
administration of justice that brings the judicial
office into disrepute.' The more serious charge
should be reserved for unjudicial conduct which
a judge acting in his judicial capacity commits
in bad faith, while the lesser charge should be
applied to conduct which a judge undertakes in
good faith but which nevertheless would appear
to an objective observer to be not only unjudicial
conduct but conduct prejudicial to public esteem
for the judicial office." (Emphasis added.)

In footnote no. 11, ~~555~~ 515 P.2d at 9, the California

Supreme Court also noted that "conduct prejudicial to the

administration of justice that brings the judicial office

into disrepute would also apply to wilful misconduct out of

office, i.e. unjudicial conduct committed in bad faith by a

judge not then acting in a judicial capacity."

It appears then that the 1972 Montana Constitutional

Convention, in limiting the provisions for judicial discipline

to the New Mexico model, and foregoing the broader provisions

of the California model, must have intended to limit the

grounds upon which the Judicial Standards Commission might

act, perhaps to preserve to a greater degree the independence

of the judiciary.

In the sense therefore that the Judicial Standards

Commission is conducting adjudicatory proceedings against

Daniel J. Shea upon the charge of "conduct prejudicial to

the administration of justice that brings the judicial

office into disrepute", it is acting in excess of its jurisdiction.

3.    Is a verified complaint a requisite for Judicial

Standards Commission proceedings?

The proceedings against Daniel J. Shea before the

Judicial Standards Commission commenced upon the receipt by

the Commission of an unverified letter from a retired district

judge making a complaint about Daniel J. Shea. The chairman

of the commission noted that the complaint of the retired district judge was "not verified nor specific" as to the instances of misconduct, but the chairman asked the members of the Commission if they wished to proceed with a preliminary investigation to determine if grounds of misconduct mentioned under Rule 9(a) were supported by the complaining letter. The minutes of the Commission for November 15, 1979, indicate that the investigating attorney recommended to the Commission, and the Commission adopted the position, that the allegations concerning parking tickets in Missoula and the allegations that references to other members of the court in dissenting opinions "constituted conduct prejudicial to the administration of justice that brings the judicial office into disrepute." The minutes reflect that the members unanimously agreed that further proceedings were required and that a hearing should be held regarding the two allegations of misconduct. It was agreed that the chairman would prepare a notice to Daniel J. Shea regarding a further hearing on these allegations. It was as a result of this meeting that the Notice of Partial Dismissal, Complaint and Notice of Institution of Further Proceedings was prepared on December 28, 1979. We have set out that particular instrument in full previously.

The "complaint" is not verified by the Commission, but is signed by all of the Commission members. Rule 9(b) of the Commission provides that the Commission, without receiving a verified statement, may make a preliminary investigation on its own motion. The McKenzie dissent charge, though not contained in the original letter from the retired district judge, arose from a suggestion of the chairman of the Commission that the statements in the McKenzie opinion be considered as to whether they constituted judicial misconduct.

-16-

Under Art. VII, § 11(2), 1972 Mont. Const., the Judicial Standards Commission is empowered to "investigate complaints, and make rules implementing this section . . ." There is no mention in the constitutional provision for a verified complaint.

The legislature, in creating the Commission, provided in section 3-1-1106, MCA, set forth previously, that the Commission or any citizen may, upon good cause shown, initiate an investigation of any judicial officer by filing a "verified written complaint" with the Commission.

The Commission's position with respect to a verified complaint is stated in its Order of July 1, 1980, at pp. 6-7:

> "It is the Commission's position that MCA
> 3-1-1106 usurps the constitutionally bestowed
> right of the Commission to adopt rules governing
> the manner by which the Commission may proceed and
> to that extent cannot be constitutionally upheld."

The District Court considered this problem and upheld the Commission:

> "The legislature is assigned the duty of
> creating the Commission and providing for
> the appointment of its prescribed membership.
> In addition it may have certain necessary
> implied powers and functions, such as funding
> and locating within the state's administrative
> functions. But the power to make rules to
> implement the section is reserved, with crystal
> clarity, to the Commission. These rules must
> certainly include procedural rules, and the
> manner in which proceedings are initiated are,
> with equal certainty, procedural rules. One
> of the rules the Commission has adopted under
> this authority is Rule 9b which permits it to
> undertake a preliminary investigation without
> receipt of a verified statement. There is no
> question raised here as to the propriety of the
> rule's promulgation. If this rule conflicts with
> Section 3-1-1106(1) the section must yield to
> the rule, the latter having constitutional
> status."

The record shows that the parking ticket charge against Daniel J. Shea grew out of an unverified letter from a retired district judge. The charge filed against Daniel J.

-17-

Shea concerning the language in the McKenzie dissent came through the initiative of the Commission itself. The Commission did not follow its own rule or the statutory requirement that the letter complaint of the retired district judge be verified. In its order of July 1, 1980, denying Daniel J. Shea's motions respecting the lack of verified complaint, the Commission stated:

> ". . . Usually, as in Justice Shea's case, the Commission does not receive a verified complaint. It is the experience of the Commission that when it requests a verified complaint, the complainant forgets it. The problem posed is whether the Commission can proceed with a preliminary investigation to determine if there is good cause for it to file a formal complaint. The Commission elected this procedure in Justice Shea's case, as allowed by Rule 9(b).

> "The decision to file a formal complaint was an official act of the Commission as shown by minutes of the meeting had on October 17, 1979, and by the signature of all members of the Commission affixed to the complaint. There is no rule requiring verification. If after investigation the Commission finds good cause, is it prohibited from filing a complaint because either the original complaint was deficient, or the Commission's complaint was not verified?" Order, July 1, 1980 at 7. (Emphasis added.)

Apparently then the Commission is assuming unto itself the right to ignore legislatively enacted provisions governing its procedure, and even its own rule requiring a verified complaint, in its perception and under the assumption that it is now acting and will act for the public good. The question, however, is not one of motives but of constitutional authority, for which the best of motives is not a substitute. Panama Refining Co. v. Ryan (1935), 293 U.S. 388, 420, 79 L.Ed. 446, 458, 55 S.Ct. 241, 248.

There is no question that the Commission can make "legislative" rules under its rulemaking authority, filling in the gaps and fleshing out the procedures for the enforcement

of judicial discipline. When, however, it adopts "inter-pretative" regulations, it is faced with quite another problem, because then, as in this case, the matter becomes one of determination of constitutional power as between the legislature on the one hand and the Commission on the other. The difference is substantial:

> "'Legislative' rules or regulations are accorded by the courts or by express provision of statute the force and effect of law immediately upon going into effect. In such instances the administrative agency is acting in a legislative capacity, sup-plementing the statute, filling in the details, or 'making the law,' and usually acting pursuant to a specific delegation of legislative power. 'Interpretative' regulations are those which purport to do no more than interpret the statute being administered, to say what it means. They constitute the administrators' construction of a statute. In such instances the administrative agency is merely anticipating what ultimately must be done by the courts; they are performing a judicial function rather than a legislative function, and interpretative regulations (in the absence of ratification by the legislature) have validity in judicial proceedings only to the extent that they correctly construe the statute and then, strictly speaking, it is the statute and not the regulation to which the individual must conform." 1 Am.Jur.2d Administrative Law, § 95, at 893.

The legislature was required by Art. VII, § 11, to create a Judicial Standards Commission. When it did so, it placed within the power of the Judicial Standards Commission not only the constitutional grounds for censure, suspension or removal but added other stipulations. It provided that a judicial officer may not participate in any proceeding involving his own censure, suspension or removal, section 3-1-1108, MCA; it provided that a judicial officer is disqualified from acting, without loss of salary, while there is pending a charge against him of a felony or a formal proceeding before the Commission for his removal or retirement, section 3-1-1109, MCA; and it provided for the suspension of a judicial officer and his eventual removal if it is finally

-19-

determined that he is guilty of a felony, section 3-1-1110, MCA. These additional provisions enacted by the legislature are founded on its power granted in Art. V, § 13(1), 1972 Mont. Const., (see infra for full text), which states that the legislature may enact "[O]ther proceedings for removal from public office for cause. . ." In the final analysis, there can be no inhibition of the legislative power, irrespective of the rulemaking authority granted to the Judicial Standards Commission, to make suitable provisions relating to the Judicial Standards Commission which do not conflict with the constitutionally granted powers of the Commission.

The legislature has broad powers relating to removal of public officers under the 1972 Montana Constitution. While the Judicial Standards Commission has a defined constitutional sphere in which it can act, the legislature may move by impeachment or "other proceedings" against public officers, under Art. V, § 13. Public officers include judicial officers. Nothing in the 1972 Constitution prevents the legislature from providing that the Judicial Standards Commission shall proceed against judicial officers by verified complaint. The Commission itself is powerless to set that provision aside. The legislature has the constitutional power to broaden the grounds upon which judicial officers may be removed or disciplined. The Judicial Standards Commission does not enjoy that power.

4. Are the charges made against Daniel J. Shea included in the constitutional phrase "willful misconduct in office?"

The District Court, in its opinion, seemed to recognize that Rule 9(a) of the Judicial Standards Commission was broader than the constitutional provision empowered.

-20-

Nevertheless, because the Judicial Standards Commission might still find that the conduct charged against Daniel J. Shea constituted "willful misconduct in office," the District Court refused to issue a writ of prohibition. We come now to consider whether either the language used by Daniel J. Shea in the McKenzie decision, and/or the parking tickets incident may nevertheless constitute "willful misconduct in office," and so be subject to discipline through the Judicial Standards Commission and the Supreme Court.

The words "in office" in the constitutional phrase are significant. Their use seems to indicate an intent on the part of the constitutional convention that the misconduct must be related to the office which the judge occupies. The cases support this inference.

We have pointed out that in the 1889 Constitution, Art. V, § 18, provides that officers not liable to impeachment were subject to removal for "misconduct or malfeasance in office."

The term "misconduct in office" used in the 1889 Constitution had received judicial construction by this Court.

State v. Examining and Trial Board of Police Dept. (1911), 43 Mont. 389, 117 P. 77, involved the action of a board to remove a Butte police chief for wrongfully collecting mileage fees. In passing, the court defined misconduct in office as "Any act involving moral turpitude, or any act which is contrary to justice, honesty, principle, or good morals, if performed by virtue of office or by authority of office, is certainly included therein." (Emphasis added) 43 Mont. at 393, 117 P. at 78.

-21-

In State v. District Court (1911), 44 Mont. 318, 324,
119 P. 1103, 1106, removal of a police judge was sought.
The charge was that he had collected compensation for which
he was unentitled, even though the compensation had been
received by him under the advice of the attorney general.
There the court decided that a willful or corrupt misconduct
or malfeasance was not necessary.

In State v. Board of Aldermen of Town of Conrad (1912),
45 Mont. 188, 122 P. 569, removal was sought of an alderman,
a lawyer, for accepting fees from a client who had licensing
problems before the Board of Aldermen.  There the Court,
in passing, quoted with approval the following passage:

> ". . . 'Cause for removal' means some substantial
> shortcoming which renders continuance in office
> or employment in some way detrimental to the
> discipline and efficiency of the service, and
> something which the law and a sound public opinion
> will recognize as a good cause for his no longer
> occupying the place.  The misconduct for which
> an officer may be removed must, in general, be
> found in his acts and conduct in the office from
> which his removal is sought.  But to treat misconduct
> or incompetency in the performance of official
> duties as the only ground of removal is to give
> too rigid and narrow an application to the
> principles governing the subject.  A cause for
> removal may exist for acts and conduct of a public
> officer at a time when he is not acting in the
> performance of a public duty, if these acts and
> conduct are such as to fairly show that he is unfit
> for the place."  45 Mont. at 195, 122 P. at 571.

The Court also found in State v. Board of Aldermen,
supra, that it was not necessary to prove that the actions
undertaken were "willful."  45 Mont. at 196, 122 P. at 572.

The latest case before the adoption of the 1972 con-
stitutional provision was State v. O'Hern (1937), 104 Mont.
126, 65 P.2d 619.  In that case, the question involved was
the removal by the governor of members of the State Highway
Commission who had received compensation for duties in
office in excess of what was then provided by law.  The

-22-

Supreme Court then reaffirmed the definition of "misconduct in office" as set forth in State v. Examining and Trial Board of Police Dept., supra, and concluded that the misconduct need not be "willful" in order to justify the removal of an officer. However, the decision turned upon the power of the governor to dismiss highway commissioners and the court did not rely on the "misconduct" charge in upholding the dismissal of the members of the highway commission.

This was the state of the judicial construction of "misconduct in office" at the time of the adoption of the 1972 constitutional provision. It is generally held that the embodiment in a constitution of provisions found in previous constitutions, without change of verbiage, precludes the court from giving their language a meaning different from that ascribed to the previous constitutional provisions, unless there is something to indicate an intention of the framers in the new constitution to alter the accepted construction. 16 Am.Jur.2d Constitutional Law, at 474-475, § 120. This Court said in Johnson v. City of Great Falls (1909), 38 Mont. 369, 372, 373, 99 P. 1059-1060:

> ". . . At the time our constitution was adopted
> the rule was quite uniform, so far as established
> by judicial decisions, that in the house originating
> a bill the vote on amendments proposed by the
> other house need not be by ayes and noes, and the
> names of those voting need not be entered on the
> journal, and, in the absence of anything indicating
> a contrary view, we must assume that the framers
> of our Constitution, in adopting section 24 of article
> 5, did so intending that the rule of interpretation
> then in vogue should be applied to it . . ."

Thus, all the cases preceding the 1972 Montana Constitution regarding removal of officers on the grounds of misconduct, related on the facts to misconduct "in office." Admittedly there is a quoted passage in one Montana case,

-23-

State v. Board of Aldermen of Town of Conrad, supra, relating to conduct outside of office, but it is entirely obiter dictum and cannot be said to be included in the law of this State at the time of the adoption of the 1972 Montana Constitution.

The addition, the Constitutional Convention's use of the word "willful" in describing the conduct which subjects a judicial officer to discipline, evinces an intent on the part of the convention to move away from the judicial constructions in the earlier cases that intent was not necessary to constitute misconduct in office. Thus, the new constitutional provision would distinguish the holding of this Court in State v. Board of Aldermen of Town of Conrad, supra.

In the Geiler case, supra, the California court was careful to emphasize in its footnote that conduct outside the office would constitute "conduct prejudicial to the administration of justice that brings the judicial office into disrepute." The court's footnote said:

> "The lesser charge of 'conduct prejudicial to the administration of justice that brings the judicial office into disrepute' would also apply to wilful misconduct out of office, i.e. unjudicial conduct committed in bad faith by a judge not then acting in a judicial capacity. It should be emphasized that our characterization of one ground for imposing discipline as more or less serious than the other does not imply that in a given case we would regard the ultimate sanction of removal as unjustified solely for 'conduct prejudicial to the administration of justice which brings the judicial office into disrepute.'" 515 P.2d at 9, fn. 11.

In reaching our decision here that misconduct in office, as required by the 1972 constitution means conduct in or arising out of the duties or responsibilities of office and does not apply to alleged misconduct outside of the office, we determine that the 1972 constitutional convention apparently intended to omit the "lesser charge" by not adopting the

same. As noted above, the convention reserved to the legislature, either through impeachment or through further legislative action, the removal of public officers, including judicial officers, for misconduct outside office:

> "Section 13. Impeachment. (1) The governor, executive officers, heads of state departments, judicial officers, and such other officers as may be provided by law are subject to impeachment, and upon conviction shall be removed from office. Other proceedings for removal from public office for cause may be provided by law." Art. V, § 13. (Emphasis added.)

If the words "in office" contained in Art. VII, § 11, 1972 Montana Constitution are to have any significance in this case, we must conclude that the parking ticket incidents, whatever the facts may be, are not matters arising from or growing out of the office of a justice of this Court.

There remains the question whether the language used by Daniel J. Shea in his dissenting opinion in McKenzie constitutes "willful misconduct in office." We conclude it does not. It is characterized by the Commission as "intemperate" but the language quoted is not profane or vulgar. It may not have been pleasant for the majority in McKenzie to have been called "intellectually dishonest" or to have been told that they were "slippery with the facts." Yet it seems nearly every day newspaper editors say something equally derogatory about our decisions. As long as a justice, or a judge, in writing opinions, does not resort to profane, vulgar or insulting language that offends good morals, it may hardly be considered "misconduct in office."

More important than to censure, suspend or remove Daniel J. Shea from office for his "intemperate" language is to preserve an independent judiciary in this State. The judicial power of a district judge is sovereign, in the name of the State, and the judicial power of a justice of

the Supreme Court is likewise sovereign, provided the decision is in and with the opinion of the majority of the Court (excluding those few cases where the constitution allows a single justice to act). The requirement of a majority for any opinion of the Supreme Court (Art. VII, § 3(1), 1972 Montana Constitution) does not mean that one in the minority is throttled and may not speak his piece. The right of a minority justice to voice his individual opinion is equal to that of any in the majority, indeed is vital to collegiality among the justices, and proper to furnish for later cases a standard or rule to which the Court may eventually adhere. There is moreover, in extreme cases, the sovereign power of this Court to remove or strike scandalous language which is deemed inappropriate for judicial decisions (Nadeau v. Texas Co. (1937), 104 Mont. 558, 576-577, 69 P.2d 593, 595-596), which inherent power has not been removed from us by the establishment of the Judicial Standards Commission.

Disciplinary proceedings should not apply to the decisional process of a judge. Otherwise judges would be as concerned with what is proper in the eyes of the Commission as with what is justice in the cause.

On the ground therefore that the charges against Daniel J. Shea do not amount to "misconduct in office" under the constitutional provision, the Judicial Standards Commission is acting in excess of its jurisdiction in this case, and a writ of prohibition should issue.

Moreover, in the absence of a verified complaint against Daniel J. Shea, the proceedings against him must be barred, since such lack of verified complaint violates a validly enacted statute and the Commission's own rule. In

-26-

such case a writ of prohibition may issue.

Accordingly, this opinion shall be and constitute a writ prohibiting the Judicial Standards Commission from proceeding further in its pending action against Daniel J. Shea.

_____
John G. Sheehy
Justice

We Concur:

_____

_____

_____
Justices

Mr. Chief Justice Frank I. Haswell did not participate in this decision.

Mr. Justice Fred J. Weber specially concurs in the Opinion of the Court on the following basis:

The Opinion of the Court described the dispositive issues in this cause to be as follows:

1. Is the Judicial Standards Commission subject to the power of the Supreme Court to issue writs of prohibition, mandamus, certiorari, or alternative writs?

2. Does Rule 9(a) of the Judicial Standards Commission exceed the constitutional power of the Judicial Standards Commission?

3. Is a verified complaint a requisite for Judicial Standards Commission proceedings?

4. Are the charges made by the Judicial Standards Commission against Daniel J. Shea included in the phrase "willful misconduct in office?"

I agree to and join in the holding of the Court with regard to issues 1, 2 and 3. Because of our holding on those three issues, I agree with the conclusion of the Court that the proceedings against Daniel J. Shea must be barred since the lack of a verified complaint violates a validly enacted statute and the Commission's own rule.

Accordingly, I join in the Opinion of the Court which constitutes a writ prohibiting the Judicial Standards Commission from proceeding further in its pending action against Daniel J. Shea.

Because of the Court's holding on the first three issues, we do have an adequate basis for the issuance of a writ of prohibition. Having reached that conclusion, I do not find a necessity or reason for this Court making any determination on issue 4. Therefore, I do not join in that

portion of the Opinion of the Court pertaining to issue 4.

_____
Justice