DISTRICT JUDGE LARSON, sitting for JUSTICE COTTER,
dissenting on the issue of imposition of costs.
¶22 Rule 13(h) of the Rules of the Judicial Standards Commission states in relevant part:
Should the commission find charges in a formal complaint to be true, and a recommendation for discipline as provided in Rule 9(c) be accepted and imposed by the supreme court, the responding judge may be assessed and required to pay all costs of the proceedings before the commission, including reasonable attorneys fees of the prosecuting attorney.
¶23 In its November 30, 2001, Opinion and Recommendations, the Commission unanimously recommended that the Supreme Court order that Michael S. Smartt be assessed the costs of the proceeding. Although Smartt filed more than 38 objections to the Commission’s recommendations, he did not challenge the recommendation concerning the assessment of costs of the proceedings.
¶24 In the October 25,2002, decision on the merits, the Court ordered that the Commission’s recommendation on costs be implemented. The Court directed the Commission to submit a statement of costs to the Clerk of the Supreme Court within ten days and granted Smartt ten days to file any objections to the costs assessed against him. Then the Court stated it would “enter a final order regarding the costs assessed against Smartt.” Harris v. Smartt, 2002 MT 239, ¶ 87, 311 Mont. 507, *137 ¶ 87, 57 P.3d 58, ¶ 87.
¶25 Now, the Court, albeit a different majority than the one affirming the Commission’s decision, has withdrawn its earlier decision awarding costs and attorney’s fees for substantive reasons raised, not just after appeal but for the first time, after decision. This process denies any opportunity to consider the reasonableness of the Commission’s assessed costs at a hearing and reallocates them under the broad brush of constitutional interpretation. Even to casual observers of our appellate system, well-established precedent has sometimes been too easily sacrificed to achieve case-by-case results desired by a majority. Now such uncertainty and lack of predictability are heightened by this post-decision change.
¶26 By basing its decision on subject matter jurisdiction, the majority avoids addressing the issue of law of the case, and predictability of decision making. If a valid subject matter jurisdiction challenge could be made here, the majority would be correct to review the challenge at this final stage of the proceedings. But the subject matter jurisdiction challenge is not valid and Smartt has waived his right to object absolutely to the imposition of costs (as opposed to the details of the costs themselves).
¶27 Section 11 of Article VII of the Montana Constitution clearly envisions an independent agency with the power to make operational rules and conduct proceedings concerning judicial discipline and removal. Only those limitations expressed in the Constitution can be applied. As the Court stated in the only other decision directly interpreting this Constitutional provision,
Article VII, § 11,1972 Montana Constitution establishing the Judicial Standards Commission, is not so much a limitation upon the powers of the Commission as it is a limitation upon the power of this Court to act in matters of judicial discipline. The Commission’s power to investigate complaints, to make rules implementing the constitutional section, and its power to issue subpoenae is not hedged with constitutional limits of any kind. The safety valve which is placed upon the wide-angled powers of the Commission is the limitation on this Court to act on the recommendations of the Commission.
State ex rel. Shea v. Judicial Standards Comm’n (1982), 198 Mont. 15, 27, 643 P.2d 210, 216; see also Powder River County v. State, 2002 MT 259, ¶ 68, 312 Mont. 198, ¶ 68, 60 P.3d 357, ¶ 68.
¶28 The Constitution does not express limitations as to how the Commission investigates complaints. Providing for staff and the costs *138 of contested proceedings are necessary essentials well within the wide discretion the Constitution has provided. Rather than rely on their longstanding rule of Constitutional interpretation, the majority now views the Constitution as a grant, not a limitation of power in requiring the express delegation of a power to assess costs in Article VII, Section 11, Montana Constitution.
¶29 The majority phrases the question presented here as whether Rule 13(h) is “necessary to the implementation” of the constitutional provision, or “appropriate for the conduct of the Commission’s affairs” or whether “it exceeds that grant of authority and imposes sanctions beyond those contemplated by the Constitution.” The majority cites no law in support of this heightened standard for the Commission’s rules. We should apply a reasonableness standard here. Article VII, Section 11(2) states, in part, that the “[Commission shall ... make rules implementing this section.” Accordingly, the Montana Legislature enacted § 3-1-1105(2), MCA, providing the Commission could “make rules for the conduct of its affairs.” It is well within the purview of this broad authority for the Commission to adopt a rule providing for imposition of costs of the proceeding.
¶30 Nor is the imposition of costs in this matter a substantive sanction. It is procedural in nature. As pointed out in the Commission’s Response to Smartt’s Exceptions to Statement of Costs, the rule on imposition of costs is reciprocal. Had Smartt prevailed in this proceeding, he could have recovered his costs and attorney’s fees.
¶31 Limiting access to funding these proceedings, particularly when the Judicial Standards Commission’s recommendations are upheld by the Supreme Court, will only encourage contests and result in more delay, cost and public frustration with this process. While it may be argued that the amount of fees is relatively small, so is our judicial budget at approximately 2.5% of the State’s total general fund appropriations in H.B. 2.
¶32 Since the majority has chosen to interpret and then create a new constitutional limitation on the award of attorney’s fees in ethical cases involving judges when the Commission decision is upheld, it necessarily assumes those funding responsibilities. Thus the taxpayers, who have already paid for Smartt’s lengthy suspension with pay, will now also assume the costs of his vigorous defense of the Complaint against him. There is presently a shortfall of government resources. One only need look to the State of Oregon, where courts are closed one day a week and attorneys not provided in non-violent felony matters; or to the State of Washington, where courthouses have been *139 shut down, to see this. The majority here, as a practical matter, is deciding to cut other essential court services to fund an ethics proceeding against a judge in which the Judicial Standards Commission’s recommendations were upheld.
¶33 This funding shift for contested ethical proceedings will multiply with more resources diverted away from essential court services, resulting in additional delay and expense to those most harmed by ethical violations — the people of Montana.
CHIEF JUSTICE GRAY and JUSTICE RICE join in the foregoing dissenting opinion of DISTRICT JUDGE LARSON.